**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILLIAM E. BAZZELLE, SR., Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>NOVOCURE LIMITED, WILLIAM DOYLE, and ASAF DANZIGER,<br><br>    Defendants. | Case No. 1:23-cv-05146<br><br>CLASS ACTION COMPLAINT<br><br>**<u>JURY TRIAL DEMANDED</u>** |

  Plaintiff William E. Bazzelle, Sr. ("Plaintiff") alleges the following upon information and belief, except as to those allegations concerning himself, which are alleged upon personal knowledge. Plaintiff's information and belief is based on the investigation of his undersigned counsel, which included, among other things, review and analysis of: (a) public statements made by or on behalf of NovoCure Limited. ("NovoCure" or the "Company"), including public filings with the U.S. Securities and Exchange Commission ("SEC"); (b) reports of securities and financial analysts; (c) news articles; and (d) industry reports. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

<u>**NATURE OF THE CLAIM**</u>

  1. Plaintiff brings this action pursuant to of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78a, et seq., and Rule 10b-5 promulgated thereunder, on behalf of himself and all persons similarly situated who purchased or otherwise acquired NovoCure securities between January 5, 2023 to June 5, 2023, inclusive (the "Class Period").

2.      On January 5, 2023, Defendants announced topline results from the Company's LUNAR Study. The announcement disclosed positive data while at the same time concealing negative data. The market did not discover this negative data, which significantly undermined and detracted from the previously reported positive data, until the Company revealed it during a presentation at the 2023 ASCO Annual Meeting exactly five months later.

3.      NovoCure provided the market with false and misleading study results in order to prop up investor expectations and share prices.  Several of the Defendants even bought and sold NovoCure's stock while in possession material, non-public information about the LUNAR Study's results, reaping significant profits at the expense of ordinary investors.  On June 5, 2023, after making numerous statements assuring investors that the LUNAR Study produced unqualified positive results, the Company revealed additional information that undermined its previous reports rendering the data unreliable, much less overwhelmingly positive. In particular, the Company revealed that a relatively small percentage of study participants had been receiving standard of care therapy (*i.e.*, immune checkpoint inhibitors), thereby rendering the study's results unreliable in terms of demonstrating clinical efficacy. Defendants knew that the study's participants did not sufficiently resemble real world settings but strung the investing public along to prop up the Company's share price.

4.      Throughout the Class Period, NovoCure's stock price remained relatively steady, propped up by false information.  When the truth of the LUNAR study results was revealed on June 5, 2023, NovoCure's shareholders immediately lost billions of dollars on extremely heavy volume.

5.      Investors in NovoCure have suffered significant losses.  This action seeks to compensate those investors and recover the damages they sustained because of Defendants' fraudulent conduct.

## JURISDICTION AND VENUE

6.      The claims asserted herein arise under and pursuant to Sections 10(b), 20(a), and 20A of the Exchange Act (15 U.S.C. §§ 78j(b) topt78t(a), and 78t-1(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

7.      This Court has subject matter jurisdiction over this action under Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

8.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly and/or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

9.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in this District.

## PARTIES

10.      Plaintiff William E. Bazzelle, Sr., purchased NovoCure securities at artificially inflated prices during the Class Period and was damaged upon the revelation of Defendants' fraud. Plaintiff's certification evidencing his transaction(s) in NovoCure is attached hereto.

11.      Defendant NovoCure is incorporated in the Bailiwick of Jersey with its principal executive offices located at No. 4 The Forum, Grenville Street, St. Heller, Jersey.   Daily

management and control of the Company are located in Switzerland, with additional operating centers located around the world.

12.     During the Class Period, NovoCure's securities traded in an efficient market on the Nasdaq under the symbol "NVCR".

13.     Defendant William F. Doyle ("Doyle") is the Company's Executive Chairman.

14.     Defendant Asaf Danziger ("Danziger") is the Company's Chief Executive Officer.

15.     Each of the Individual Defendants:

    (a)     directly participated in the management of NovoCure;

    (b)     was directly involved in the day-to-day operations of NovoCure at the highest levels;

    (c)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    (d)     was directly or indirectly involved in the oversight or implementation of NovoCure's business and finances;

    (e)     was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning NovoCure; and/or

    (f)     approved or ratified these statements in violation of the federal securities laws.

16.     Because of the Individual Defendants' positions within NovoCure, they had access to undisclosed information about the true nature of the LUNAR study results via access to internal corporate documents (including NovoCure's scientific reports, projections regarding FDA approval timelines, and efficacy of its scientific study evaluating the use of TTFields in the

treatment of NSCLC together with standard therapies, and how the results of this study affected the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

17.     As officers of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's scientific study evaluating the use of TTFields in the treatment of non-small cell lung NSCLC together with standard therapies, chain issues and their effect on Company operations, including NovoCure's present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of NovoCure's securities would be based upon truthful and accurate information.  The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

18.     The Individual Defendants, because of their positions with NovoCure, possessed the power and authority to control the contents of NovoCure's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  Each Individual Defendant was provided with copies of NovoCure's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed

from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

19.    Each of the Individual Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of NovoCure's securities by disseminating materially false and misleading statements and/or concealing material adverse facts.  This scheme caused Plaintiff and other shareholders to purchase NovoCure's securities at artificially inflated prices.

## FACTUAL BACKGROUND

20.    NovoCure is a global oncology company with a proprietary platform technology called Tumor Treating Fields ("TTFields"), which are electric fields that exert physical forces to kill cancer cells via a variety of mechanisms.  One of NovoCure's key priorities has been to drive commercial adoption of Optune and Optune Lua, the Company's commercial TTFields devices, and to advance clinical and product development programs intended to extend overall survival in some of the most aggressive forms of cancer.

21.    Optune is approved by the U.S. Food and Drug Administration ("FDA") under the Premarket Approval ("PMA") pathway for the treatment of adult patients with newly diagnosed glioblastoma ("GBM") together with temozolomide, a chemotherapy drug, and for adult patients with GBM following confirmed recurrence after chemotherapy as monotherapy treatment.

22.    NovoCure has asserted that the physical mechanisms of action behind TTFields therapy may be broadly applicable to solid tumor cancers.  NovoCure conducted a scientific study

evaluating the use of TTFields in the treatment of non-small cell lung cancer ("NSCLC") together with standard therapies, called LUNAR.

23.     In April 2022, Patrick Bafuma, a contributor to The Motley Fool's stock commentary, explained the importance of the LUNAR study to NovoCure's bottom line.  He said that:

> There are few approvals that can immediately impact a large patient population like NovoCure's Optune for non-small cell lung cancer (NSCLC).  Already approved for glioblastoma, the company's tumor-treating field technology, Optune, is a wearable device that disrupts cancer cell division and growth.  And there is good reason to believe FDA approval for this indication is highly likely, if not in late 2022, then in early 2023.  In fact, it was just over a year ago when both patients and NovoCure received great news.  An independent data monitoring committee determined that its phase 3 LUNAR trial for stage 4 NSCLC (after failure with platinum-based therapy) could proceed with a reduced trial size. During a scheduled interim analysis, it was believed that continuing the trial was likely unnecessary, and withholding Optune was possibly unethical. This doesn't happen often and is usually a sign of an overwhelmingly positive trial.  Final LUNAR data is expected later this year, and this prior announcement makes me believe great news is coming. And if that is the case, FDA approval is practically inevitable.

24.     In early 2023, NovoCure completed patient follow-up and announced top line results from its pivotal Patients treated with TTFields and standard therapies who demonstrated a statistically significant and clinically meaningful improvement in overall survival over standard therapies alone. NovoCure asserted that the LUNAR study also showed a statistically significant and clinically meaningful improvement in overall survival when patients were treated with TTFields and immune checkpoint inhibitors, as compared to those treated with immune checkpoint inhibitors alone, and a positive trend in overall survival when patients were treated with TTFields and docetaxel versus docetaxel alone.  When the top line results were released on January 5, 2023, NovoCure stated that they expected to present full results of the LUNAR study at a future medical conference.

25.    Throughout the Class Period, NovoCure continued to make positive statements about the LUNAR study results.  Then, on June 5, 2023, when it made its public statements about the LUNAR study results, the public discovered that the LUNAR study results were materially worse than represented and, in fact, the data revealed that the control arm of the study did not adequately represent current standard of care conditions, thereby making the data less significant in terms of proof of efficacy.

26.    In response to the announcement, NovoCure's stock price plummeted as investors and analysts reevaluated the true significance of NovoCure's scientific study evaluating the use of TTFields in the treatment of NSCLC together with standard therapies.  Throughout the Class Period, NovoCure's stock price slowly lost value, but when the truth finally was revealed, the bottom fell out. In the span of just a day, NovoCure's stock price substantially dropped, eliminating approximately $3.5 billion in market capitalization.

## SUBSTANTIVE ALLEGATIONS

**A.    *False and/or Materially Misleading Statements***

27.    Defendants misrepresented NovoCure's financial health and operations by making false and/or materially misleading statements about the results of the LUNAR scientific study evaluating the use of TTFields in the treatment of NSCLC together with standard therapies. These statements concealed from investors the true nature of NovoCure's finances and future earnings calculations, which, in turn, artificially inflated the price of NovoCure's securities.

*January 5, 2023*

28.    On January 5, 2023, NovoCure issued the highly anticipated topline results of the LUNAR study, noting in a press release filed with the SEC that:

> The LUNAR study met its primary endpoint, demonstrating a ***statistically significant and clinically meaningful improvement*** in overall survival over

standard therapies alone. The LUNAR study is a pivotal, open-label, randomized study evaluating the safety and efficacy of Tumor Treating Fields (TTFields) together with standard therapies for stage 4 non-small cell lung cancer (NSCLC) following progression while on or after treatment with platinum-based therapy.

The LUNAR study also showed a ***statistically significant and clinically meaningful improvement*** in overall survival when patients were treated with TTFields and immune checkpoint inhibitors (ICI), as compared to those treated with immune checkpoint inhibitors alone, and a positive trend in overall survival when patients were treated with TTFields and docetaxel versus docetaxel alone. Patient enrollment was well balanced between the ICI and docetaxel cohorts of the experimental and control arms, and control arms performed in line with prior studies. TTFields therapy was well tolerated by patients enrolled in the experimental arm of the study.

…

NovoCure plans to release the full results of the LUNAR study at a future medical conference. NovoCure expects to file a Premarket Approval application with the U.S. Food and Drug Administration in the second half of 2023.

(Emphasis added).

29.    The day before these results were provided to the market, NovoCure's stock price closed at $70.53 per share. With the anticipated positive results being absorbed in overnight trading, NovoCure's stock price opened at $108.16 per share. After the LUNAR study results were provided to the market on January 5, 2023, NovoCure's stock price closed that day at a high of $120.03 per share.

### *January 9, 2023*

30.    On January 9, 2023, NovoCure issued a press release with preliminary unaudited financial results and operational updates for the fourth quarter and full year ending December 31, 2022. In the press release, Doyle noted:

The successful LUNAR study marks the beginning of a transformational period where we anticipate final data from multiple pivotal trials. We are eager to reach these clinical milestones and energized by the prospect of treating tens of thousands of patients who could benefit from Tumor Treating Fields.

31.    The January 9 press release also stated that:

In January 2023, NovoCure announced the topline results of the pivotal LUNAR study in non-small cell lung cancer. The LUNAR study met its primary endpoint, demonstrating a statistically significant and clinically meaningful improvement in overall survival. The LUNAR study showed a statistically significant and clinically meaningful improvement in overall survival when patients were treated with TTFields and immune checkpoint inhibitors (ICI), as compared to those treated with immune checkpoint inhibitors alone, and a positive trend in overall survival when patients were treated with TTFields and docetaxel versus docetaxel alone. TTFields therapy was well tolerated by patients enrolled in the experimental arm of the study.

*February 23, 2023*

32.    On February 23, 2023, NovoCure issued a press release to report on 10-K filing regarding its financial results for the fourth quarter and full year ending December 31, 2022.

33.    In this press release, the Company provides some context to the LUNAR study, but maintained its limited release of information on the results, revealing only positive information. Specifically, the press release states:

In 2017, we enrolled the first patient in our LUNAR study ("LUNAR"), a pivotal study testing the effectiveness of TTFields in combination with immune checkpoint inhibitors or docetaxel versus immune checkpoint inhibitors or docetaxel alone for patients with stage 4 NSCLC who progressed during or after platinum-based therapy. It is estimated that approximately 46,000 patients receive second-line treatment for stage 4 NSCLC each year in the U.S. The primary endpoint is superior overall survival of patients treated with TTFields plus immune checkpoint inhibitors or docetaxel versus immune checkpoint inhibitors or docetaxel alone. We believe our protocol incorporates the evolving standard of care for second-line treatment of NSCLC. TTFields is intended principally for use in combination with other standard-of-care treatments, and LUNAR was designed to generate data that contemplates multiple outcomes, all of which we believe will be clinically meaningful.
…

In January 2023, we announced the LUNAR study met its primary endpoint, demonstrating a statistically significant and clinically meaningful improvement in overall survival for patients treated with TTFields and standard therapies compared to those treated with standard therapies alone. The LUNAR study also showed a statistically significant and clinically meaningful improvement in overall survival when patients were treated with TTFields and immune checkpoint inhibitors, as compared to those treated with immune checkpoint inhibitor alone, and a positive trend in overall survival when patients were treated with TTFields and docetaxel versus docetaxel alone. Patient enrollment was well balanced between the immune

checkpoint inhibitor and docetaxel cohorts of the experimental and control arms, and the control arms performed in line with prior studies. TTFields therapy was well tolerated by patients enrolled in the experimental arm of the study. The publication of full data from the LUNAR study is anticipated in 2023.

34.    In the press release issued concurrently with the 10-K, Doyle and Danziger continued to tout the success of the LUNAR study, by noting:

> 2022 was a year of solid execution for NovoCure," said William Doyle, NovoCure's Executive Chairman. "In 2022, we generated over half a billion dollars in net revenues, expanded our international footprint, introduced our next generation arrays and announced results from multiple, successful pilot studies; and we have excellent momentum to start 2023. We announced that our pivotal LUNAR study met its primary overall survival endpoint and we have now completed enrollment in our pivotal PANOVA-3 study in pancreatic cancer and are just two patients away from completing enrollment in our pivotal METIS study in brain metastases from non-small cell lung cancer. Our teams are executing well, and their achievements are building the foundations for the future of NovoCure. We are looking forward to an eventful 2023."

35.    Danziger added that "The positive top-line readout from the pivotal LUNAR study marked the beginning of a transformational 24 months for NovoCure.  LUNAR is the first of four pivotal studies we expect to read out in the next two years which could dramatically increase the number of patients eligible for Tumor Treating Fields."

36.    In a section titled "Anticipated clinical milestones," NovoCure continued to promise that the data from its pivotal LUNAR study in non-small cell lung cancer would be fully revealed in the first half of 2023.

<u>*May 4, 2023*</u>

37.    **On May 4, 2023**, NovoCure submitted its 1st quarter 2023 report on Form 10Q filed with the SEC.  In the 10Q, NovoCure did not deviate from the message it had been giving on the LUNAR study results on January 5, noting:

> In January 2023, we announced top line results from our pivotal LUNAR study evaluating the use of TTFields in the treatment of non-small cell lung cancer ("NSCLC") together with standard therapies. Patients treated with TTFields and standard therapies demonstrated a statistically significant and clinically meaningful

improvement in overall survival over standard therapies alone. The LUNAR study also showed a statistically significant and clinically meaningful improvement in overall survival when patients were treated with TTFields and immune checkpoint inhibitors, as compared to those treated with immune checkpoint inhibitors alone, and a positive trend in overall survival when patients were treated with TTFields and docetaxel versus docetaxel alone. Full results from the LUNAR study will be presented at the American Society of Clinical Oncology annual meeting in June.

38.    On that same day, NovoCure issued a press release to report on the 10-Q filing by confirming that it was going to release the full results of its LUNAR study at the upcoming 2023 ASCO annual meeting.  There were no further statements previewing the information that would be presented at the meeting, other than the same statements it had been making several times during the Class Period.

* * *

39.    Defendants' statements referenced in ¶¶ 28 - 38 constituted violations of the securities laws because the statements were false and/or misleading as well as failed to disclose material adverse facts about one of the Company's pivotal scientific studies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company concealed the true nature of the LUNAR study results—that the overwhelmingly positive way that the Company described them was only a half-truth at best given that the study failed to evaluate the efficacy of the drug against a population of patients that had been receiving standard of care treatment; (ii) as a result, the Company's business prospects, effectiveness of its products, and ultimately the likelihood of FDA approval were materially misleading during the Class Period; (iii) the foregoing, once revealed, was reasonably likely to have a material negative impact on the Company's financial condition; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

B.    *The Truth Emerges*

<u>*June 6, 2023*</u>

40.    On June 6, 2023, the long-anticipated presentation of NovoCure's LUNAR study's full results were presented at the American Society of Clinical Oncology's annual meeting. To inform the market what was being presented at the meeting, Defendants issued a press release about its results of the LUNAR study. While the results were positive on the whole, there was an underlying problem with the data set utilized in the study. The relevant aspect of the LUNAR study is described as:

> Patients randomized to receive TTFields therapy together with standard therapies (n=137) demonstrated median OS of 13.2 months compared to 9.9 months in patients treated with standard therapies alone (n=139). A profound OS benefit from TTFields therapy was demonstrated in the immune checkpoint inhibitor (ICI) subgroup. Patients randomized to receive TTFields therapy and physician's choice ICI (n=66) demonstrated a median OS of 18.5 months versus a median OS of 10.8 months in patients treated with ICIs alone (n=68; HR=0.63; *P*=0.03). Patients randomized to receive TTFields therapy and docetaxel (n=71) had a positive survival trend with a median OS of 11.1 months vs 8.7 months in patients treated with docetaxel alone (n=71). TTFields therapy was well-tolerated with no added systemic toxicities and few grade 3 (no grade 4 or 5) device-related adverse events.

41.    Providing a scientific explanation of what was wrong with NovoCure's data set, H.C. Wainwright & Co. explained:

> We believe expectations for a positive difference in OS were at least 4 months in the ICI arm, and view 8 months OS difference as differentiating. However, we believe a key data point for investors was ICI-exposure in the ICI arm given ICIs are now the [Standard Operating Procedure] for 1L NSCLC. In the ICI arm, only 2% of patients were ICI-experienced and in the docetaxel arm, 58% of patients were ICI-experienced. We believe this does raise the question of whether TTFields + ICIs would be equally effective in patients who already progressed on ICIs in the 1L setting, which would occur much more frequently in the real-world setting. For this reason, we believe the stock reaction is mixed, given OS data were positive and better than expectations, though baseline characteristics make data harder to interpret.

42.    In fact, many analysts were quick to highlight the meaning and impact of what NovoCure had been omitting from its positive statements around the LUNAR study results.

43.     For example, The Motley Fool contributor Dan Caplinger summarized the problem regarding NovoCure's press release by explaining in more layman's terms why NovoCure's study data's positive appearance was not sufficient, noting that:

> [t]he challenge could be that the structure of the trial itself wasn't ideal in demonstrating NovoCure's advantage over conventional therapy. Unfortunately, the Lunar trial only included a small subgroup of patients whose treatment included immune checkpoint inhibitors. Despite showing an even greater survival advantage of eight months, the trial's relatively shallow look at that subgroup made some question the weight of the evidence -- particularly because most patients receiving conventional cancer therapy now get immune checkpoint inhibitors as part of their treatment.
>
> Despite the positive data, NovoCure still has a long way to go to convince the medical community to use its treatment, as well as government agencies to approve it and the health insurance industry to pay for it. Shareholders aren't happy that the road to making Tumor Treating Fields available to non-small cell lung cancer patients could be longer than hoped.

44.     When the smoke cleared at the end of the trading day, NovoCure's stock had dropped from June 5th's closing price of $82.51 to June 6th closing price of $47—a loss of $35.51 per share—or 43% of its value.  The volume of shares traded that day was extraordinarily heavy compared to the daily average volume during the Class Period.

45.     Overall, financial analysts lowered their price targets due to the market's negative reaction to NovoCure's news.

## C.     *Loss Causation*

46.     The market for NovoCure common stock was open, well-developed, and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, NovoCure stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired NovoCure stock relying upon the integrity of the market of NovoCure, and market information related to the Company and have been damaged thereby.

47.     During the Class Period, Defendants named in this Action materially misled the investing public, thereby inflating the price of NovoCure stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make their own statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about NovoCure's business, operations, and prospects as alleged herein.

48.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about NovoCure's clinical prospects.  These material misstatements and/or omissions had the cause and effect of creating and/or maintaining in the market an unrealistically positive assessment of the Company and its operations, thus causing the Company's stock to be overvalued and artificially inflated at all relevant times.  The materially false and/or misleading statements made by Defendants named in this Action during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

49.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that caused the price of NovoCure stock to be artificially inflated by failing to disclose and/or misrepresenting the adverse facts detailed herein. As Defendants' misrepresentations and fraudulent conduct were gradually disclosed and became

apparent to the market, the artificial inflation in the price of NovoCure's stock was removed, and the price of NovoCure stock fell.

50.     As a result of their purchases of NovoCure stock during the Class Period at artificially inflated prices, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

51.     The timing and magnitude of the price decline in NovoCure stock negate any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the NovoCure Defendants' fraudulent conduct.

**D.     *Presumption Of Reliance; Fraud-On-The-Market***

52.     At all relevant times, the market for NovoCure stock was an efficient market for the following reasons:

     (a)     NovoCure stock met the requirements for listing, and was listed and actively traded on the Nasdaq, a highly efficient and automated market;

     (b)     As a regulated issuer, NovoCure filed periodic public reports with the SEC and the Nasdaq;

     (c)     NovoCure communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

     (d)     During the Class Period, on average, millions of NovoCure shares were traded on a weekly basis.  On news days, the Company's trading volume

increased into the millions, reflecting an active trading market for NovoCure stock and investors' expectations being impounded into the stock price; and

(e)     The proportion of statistically significant stock price movement days for NovoCure stock on news days is significantly over the proportion of non-news days and, thus, NovoCure shares are more likely to have a statistically significant return on a day with news than no-news, consistent with an informationally efficient market.

53.    As a result of the foregoing, the market for NovoCure's securities promptly digested current information regarding NovoCure from all publicly available sources and reflected such information in NovoCure's stock price.  Under these circumstances, all purchasers of NovoCure securities during the Class Period suffered similar injury through their purchase of NovoCure securities at artificially inflated prices, and a presumption of reliance applies.

54.    Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures.  Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.  Here, the facts withheld are material because an investor would have considered the full results of NovoCure's LUNAR study when deciding whether to purchase and/or sell NovoCure securities.

**E.     *No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine***

55.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

56.     To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

57.     Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of NovoCure who knew that the "forward-looking statement" was false.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.

58.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Class Action Complaint.  The statements alleged to be false and misleading herein all relate to then- existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-

looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of NovoCure who knew that the statement was false when made.

### ADDITIONAL SCIENTER ALLEGATIONS

59.    During the Class Period, Defendants had both the motive and opportunity to conduct fraud. They also had actual knowledge of the misleading nature of the statements they made or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of Spectrum common stock during the Class Period.

60.    Defendants and other corporate insiders were motivated to commit the acts alleged herein in order to inflate the price of NovoCure common stock and sell it at artificially inflated prices. On January 5, 2023, just before the start of the Class Period, Danziger exercised 25,000 options at $11.46 per share and share.  He immediately sold the shares he acquired for anywhere from $11.238 per share to $119.987 per share. The same day, he exercised 187,500 options at $7.15 per share and immediately sold them for $108 per share. By exercising these options and selling the resulting shares when he did, Danziger was able to secure proceeds of over $23 million that he otherwise would not have been able to realize had he waited until after the truth emerged concerning Defendants' fraud.

61.    Other NovoCure insiders similarly profited at the expense of ordinary shareholders. For example, during the Class Period: Pritesh Shah, Chief Growth Officer, sold 387 shares at $108

per share; Uri Weinberg, Chief Science Officer, exercised 1,946 shares at $47.04 per share, and

immediately sold them for approximately $120 per share; Frank Leonard exercised 7,826 shares

at $14.37 per share, 7,500 shares at $11.46 per share, 5,517 shares at $7.15 per share, and two

tranches of 7,183 shares at $21.15 per share, and immediately sold all of these newly purchased

shares at prices ranging from $108 to $119 per share. Other insiders acquired and sold shares too

while in possession of material, non-public information about the Company's LUNAR study

results—information that would later cause the price of NovoCure's shares to plumet.

## CLASS ACTION ALLEGATIONS

62.     Plaintiff brings this action on behalf of all individuals and entities who purchased

acquired NovoCure securities on the public market during the Class Period, and were damaged,

excluding NovoCure, the Individual Defendants and each of their immediate family members,

legal representatives, heirs, successors or assigns, and any entity in which any of the Defendants

have or had a controlling interest (the "Class").

63.     The Class members are so numerous that joinder of all members is impracticable.

Throughout the Class Period, shares of NovoCure common stock were actively traded on the

Nasdaq.  While the exact number of Class members is unknown at this time and can be ascertained

only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of

members in the proposed Class.  Record owners and other Class members may be identified from

records maintained by NovoCure or its transfer agent and may be notified of the pendency of this

action by mail, using the form of notice similar to that customarily used in securities class actions.

As of the filings of its most recent quarterly report—May 4, 2023, NovoCure had over 106 million

shares of common stock outstanding.  Upon information and belief, these shares are held by

thousands of individuals located throughout the entire world. Joinder would be highly impracticable.

64. Plaintiff's claims are typical of the claims of the Class members as all Class members are similarly affected by the Defendants' respective wrongful conduct in violation of the federal laws complained of herein.

65. Plaintiff has and will continue to fairly and adequately protect the interests of the Class members and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

66. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by the Defendants' respective acts as alleged herein;

(b) whether the Defendants acted knowingly or with deliberate recklessness in issuing false and misleading statements concerning the results of NovoCure's LUNAR study;

(c) whether the price of NovoCure's securities during the Class Period was artificially inflated because of the Defendants' conduct complained of herein; and

(d) whether the Class members have sustained damages and, if so, what is the proper measure of damages.

67. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### Violation of Section 10(b) and Rule 10b-5 Against All Defendants

68.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

69.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other Class members to purchase NovoCure securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

70.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of NovoCure securities in an effort to maintain artificially high market prices for NovoCure securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

71.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about the Company's LUNAR study results as specified herein.

72.    These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of NovoCure's value, performance, and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about NovoCure's LUNAR study results of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of NovoCure securities during the Class Period.

73.    Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at NovoCure during the Class Period and members of NovoCure's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of NovoCure, was privy to and participated in the creation, development and reporting of NovoCure's SEC filings and public statements concerning NovoCure's LUNAR study results; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendants and was advised of and had access to other members of NovoCure's management team, internal reports, and other data and information about NovoCure's LUNAR study results, at all relevant times; and (4) each Individual Defendant was aware of NovoCure's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

74.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing NovoCure's less than stellar results from its LUNAR study from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' misrepresentations concerning the full results of NovoCure's LUNAR study throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

75.     As a result of the dissemination of materially false and misleading information and failure to disclose material facts, as set forth above, the market price of NovoCure securities was artificially inflated during the Class Period.   In ignorance of the fact that market prices of NovoCure securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other Class members acquired NovoCure securities during the Class Period at artificially high prices and were or will be damaged thereby.

76.     At the time of said misrepresentations and omissions, Plaintiff and other Class members were ignorant of their falsity and believed them to be true.   Had Plaintiff and the other Class members and the marketplace known the truth regarding the true results of NovoCure's

LUNAR study, which was not disclosed by Defendants, Plaintiff and other Class members would not have purchased or otherwise acquired their NovoCure securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

77.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

78.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other Class members suffered damages in connection with their respective purchases and sales of NovoCure securities during the Class Period.

79.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of common stock giving rise to the cause of action.

### COUNT II

### The Individual Defendants Violated Section 20(a) of the Exchange Act

80.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

81.     The Individual Defendants acted as controlling persons of NovoCure within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of NovoCure's operations and/or intimate knowledge of the false information filed by NovoCure with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of NovoCure, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited

access to copies of NovoCure's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

82.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of NovoCure and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same.

83.     As set forth above, NovoCure and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

84.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other Class members suffered damages in connection with their purchases of NovoCure's common stock during the Class Period.

85.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of common stock giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a)     Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of the Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

In accordance with Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial of all issues involved, now, or in the future, in this action.

Dated: June 19, 2023                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*
_____
Adam M. Apton
55 Broadway, 4th Floor
New York, NY 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Plaintiff William E. Bazzelle, Sr.*