**SIDLEY**

SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN STREET
CHICAGO, IL 60603
+1 312 853 7000
+1 312 853 7036 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 312 853 7850
HSHEPPARD@SIDLEY.COM

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _1/12/2024_

January 12, 2024

**By ECF**
Honorable Gregory H. Woods
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

**MEMORANDUM ENDORSED**

Re:    *William E. Bazzelle, Sr. v. NovoCure Limited et al.*, Case No. 1:23-cv-5146-GHW

Dear Judge Woods:

Pursuant to Rule 2.E of this Court's individual rules, Defendants request a pre-motion conference on their anticipated motion to dismiss the Amended Complaint, in which Plaintiff alleges violations of the Securities Exchange Act of 1934. Plaintiff fails to satisfy the heightened falsity and scienter requirements of the Private Securities Litigation Reform Act. Because Defendants' counsel has an arbitration from January 22 through February 2, Defendants respectfully request that the Court schedule the conference on or after February 6, 2024.

**BACKGROUND**

Defendants are NovoCure Limited and three of its executives. NovoCure is a global oncology company whose innovative cancer therapy, Tumor Treating Fields, has been approved by the FDA for the treatment of brain and certain lung cancers. This case arises from NovoCure's LUNAR clinical trial, which tested TTFields in non-small cell lung cancer (NSCLC). The patients were very sick: Their cancers had progressed to Stage 4, and earlier treatment had failed. Half of the patients received TTFields with an already-approved treatment, either chemotherapy or immuno-oncology drugs called checkpoint inhibitors (ICIs). The control groups received the already-approved therapy alone.

In January 2023, NovoCure reported topline trial results. The trial succeeded as to its primary endpoint: TTFields demonstrated superiority in overall survival compared to the already-approved treatments alone. When results were broken down between the two types of already-approved treatments (secondary endpoints of the trial), TTFields showed a statistically significant overall survival benefit on the ICI arm. On the chemotherapy arm, TTFields showed a positive trend in overall survival, but did not reach statistical significance. NovoCure spoke enthusiastically about these results, characterizing them as "clinically meaningful" and "profound"—which they were.

As is common in clinical trial reporting, NovoCure confined its initial announcement to topline results, telling investors that it would report complete trial data at an upcoming medical conference. NovoCure repeated that message between January and May 2023. During this period,

research analysts publicly speculated that two factors could impact physicians' interest in prescribing TTFields after FDA approval. First, analysts noted that the standard of care for *first*-line NSCLC had shifted during the trial, which meant that the trial population (dating from 2017) would to some extent diverge from the treatable population in 2023 and beyond. Second, analysts noted that the trial protocol did not require stratification by reference to the PD-L1 biomarker, which can be used to predict a patient's responsiveness to certain ICIs.

On June 6, 2023, NovoCure reported detailed data at the annual meeting of the American Society of Clinical Oncology. The overall survival benefit on the ICI arm was close to 8 months, exceeding market expectations. This was an exceptionally positive outcome: 8 months of additional longevity with no toxicities. This was the first advance in Stage 4 refractory NSCLC in 7 years.

As expected, NovoCure reported that the majority of patients in the trial received the older standard of care in first-line treatment, which meant that the trial population diverged in this respect from the current U.S. patient population. NovoCure reported that PD-L1 scores were available for 55% of the patients, and that such scores were balanced between the treatment and control cohorts.

Notwithstanding these results, NovoCure's stock fell 43% on June 6. Plaintiff attributes this to fraud. Critically, Plaintiff does not question the accuracy of the reported topline results. Plaintiff's theory is that NovoCure failed to disclose the purported fact that LUNAR "suffered from serious flaws." The first flaw, Plaintiff says, is that the trial population diverged from the "currently-relevant" population. The second is that PD-L1 scores for 45% of the patients were "missing." Plaintiff speculates that, as a result, prescribers will never be able to rule out the possibility that the 8-month survival benefit was caused by an imbalance in PD-L1 scores between the two cohorts, and speculates that the "magnitude" of the benefit *was* in fact caused by a PD-L1 imbalance, rather than TTFields.

## I.    PLAINTIFF FAILS TO ALLEGE FALSITY.

***Reporting topline trial results does not trigger a duty to release complete data.*** Plaintiff claims that by presenting topline results, NovoCure assumed a duty to disclose complete data, immediately. This is contrary to law. "[D]issemination of top-line results does not trigger a duty to disclose the full results of a study." *In re Amarin Corp. PLC Sec. Litig.*, 2021 WL 1171669, at *15 (D.N.J. Mar. 29, 2021), *aff'd*, 2022 WL 2128560 (3d Cir. June 9, 2022).

***Plaintiff's claim impermissibly attacks trial design.*** Plaintiff asserts that LUNAR "suffered from serious flaws," which were undisclosed. A critique of trial design does not constitute a fraud claim. *Abely v. Aeterna Zentaris, Inc.*, 2013 WL 2399869, at *9 (S.D.N.Y. May 29, 2013) (citing *Kleinman v. Elan Corp.*, 706 F.3d 145, 154 (2d Cir. 2013)). Nor were the purported "flaws" concealed. The trial design was publicly available, and market participants discussed the population's divergence from the treatable population and that the trial was not stratified for PD-L1 expression.

***Plaintiff has not satisfied the requirements for challenging opinion statements.*** Reports of clinical trial results are analyzed as opinion statements governed by the Supreme Court's *Omnicare* framework. *Tongue v. Sanofi*, 816 F.3d 199, 213 (2d Cir. 2015). The vast majority of the challenged statements are reports of trial results, including statements that the topline results were "clinically meaningful" and "profound," that there was "nothing funky" about the performance of the control groups, and that the trial's arms were "well balanced." Plaintiff's claim does not come within any of

*Omnicare*'s three narrow paths for challenging opinion statements. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015).

Plaintiff challenges a statement that PD-L1 status is a "red herring" in second-line treatment. But Plaintiff provides no basis for his attack on this statement about how oncology works, let alone for any contention that Defendants did not genuinely believe that PD-L1 status is not predictive in the second line. "Securities law is simply not a vehicle through which courts will police disagreements in the cancer research community or the parameters of clinical trials." *Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at *13 (S.D.N.Y. June 8, 2016).

***General statements about TTFields' prospects were accurate and non-actionable.*** Defendants also referred to "the beginning of a transformational period," the expected "final data from multiple clinical trials," and the "opportunity to treat many, many, many more patients." Plaintiff takes issue with those statements but does not dispute that NovoCure expected other trial results—or allege that Defendants were not excited about the future. In any event, such statements of corporate optimism are not actionable. *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).

## II. PLAINTIFF FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER.

Plaintiff pleads no facts suggesting that Defendants believed anything other than that the reported topline results were highly promising—no allegations about confidential witnesses, company documents, or anything else bearing on Defendants' states of mind. Plaintiff does not even allege when Defendants came into possession of LUNAR's full read-out or information about PD-L1 status in the trial cohort. Plaintiff has not come close to establishing the strong, cogent, and compelling inference of fraud required by *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

***Most of Plaintiff's scienter allegations are deficient boilerplate.*** Plaintiff's scienter allegations largely consist of boilerplate that could be alleged against any company and any executive—*e.g.*, that the individual Defendants were "privy to confidential proprietary information concerning NovoCure" and held "high-level positions with the Company." Bland assertions like these do not allege scienter. *Schwab v. E*Trade Fin. Corp.*, 285 F. Supp. 3d 745, 757 (S.D.N.Y. 2018).

***Plaintiff's stock sale allegations do not establish scienter.*** Plaintiff refers to stock sales by CEO Danziger and CFO Cordova—but not Executive Chairman Doyle. Danziger's sales were made under a Rule 10b5-1 plan. Cordova's were made to pay tax liability when options vested. These nondiscretionary sales do not show scienter. *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 720 n.5 (S.D.N.Y. 2018); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 592 (S.D.N.Y. 2011).

***Benign inferences outweigh any inference of fraud.*** The strongest inference is that Defendants were understandably enthusiastic about the blockbuster LUNAR results. In describing the results as "profound" and "clinically meaningful," Defendants sincerely and accurately expressed well-founded enthusiasm. Plaintiff's competing contention—that Defendants hid purported flaws in the trial knowing that full results would be released in a matter of months—is not compelling.

Defendants reserve and do not waive any arguments for dismissal not specifically mentioned in this letter.

Very truly yours,

/s/ Hille R. Sheppard

Hille R. Sheppard

cc:    All counsel of record (via ECF)

Application granted.  Defendants' request for a pre-motion conference is granted.  The Court will hold a teleconference regarding Defendants' proposed motion to dismiss the amended complaint on February 7, 2024 at 3:00 p.m.  The parties are directed to the Court's Individual Rules of Practice in Civil Cases, which are available on the Court's website.  Rule 2 of the Court's Individual Rules contains the dial-in number for the conference and other relevant instructions.  The parties are specifically directed to comply with Rule 2(C) of the Court's Individual Rules.

SO ORDERED.

Dated: January 12, 2024
New York, New York

_____
GREGORY H. WOODS
United States District Judge

4