UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

WILLIAM E. BAZZELLE, SR., Individually   :   Civil Action No. 1:23-cv-05146-GHW
and on Behalf of All Others Similarly Situated, :

                                             :   CLASS ACTION

                  Plaintiff,     :

                                             :

    vs.                         :

                                           :

NOVOCURE LIMITED, WILLIAM DOYLE, :
ASAF DANZIGER and ASHLEY :
CORDOVA,                           :

                                         :

                Defendants.   :

                                         :

———————————————————————— x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
EXHIBITS SUBMITTED WITH DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...........................................................................................................1

II.    ARGUMENT.................................................................................................................3

    A.    The Court Should Grant Plaintiff's Motion to Strike ...........................................3

        1.    Standards for Considering the Disputed Exhibits......................................3

        2.    The Court Cannot Take Judicial Notice of the SEC Filings or the Prescription Exhibits.................................................................................5

            a.    SEC Filings .................................................................................5

            b.    The Prescription Exhibits...........................................................7

        3.    The Earnings Call, Analyst Reports and ASCO PowerPoint Should Be Stricken..................................................................................................8

            a.    The Earnings Call .......................................................................9

            b.    The Analyst Reports Should Be Stricken ....................................9

            c.    The ASCO PowerPoint...............................................................10

        4.    The Clinical Trial Entry Should Be Stricken...........................................11

        5.    The Insider Sales Materials Should Be Stricken......................................13

    B.    References to, and Assertions and Arguments Based on, the Disputed Exhibits Should Be Stricken from Defendants' Motion to Dismiss......................14

III.    CONCLUSION..............................................................................................................14

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Barron v. Helbiz, Inc.*,
2021 WL 4519887
(2d Cir. Oct. 4, 2021) .................................................................................................4

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .......................................................................................4

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
957 F. Supp. 2d 277 (S.D.N.Y. 2013) ..........................................................10, 11, 14

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) .........................................................................................3

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
323 F. Supp. 3d 393 (S.D.N.Y. 2018) .......................................................................12

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,
336 F. Supp. 3d 196 (S.D.N.Y. 2018) .........................................................................4

*Gale v. Smith & Nephew, Inc.*,
989 F. Supp. 2d 243 (S.D.N.Y. 2013) .........................................................................7

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016) ...............................................................................3, 4, 8

*In re Chembio Diagnostics, Inc. Sec. Litig.*,
586 F. Supp. 3d 199 (E.D.N.Y. 2022) .........................................................................9

*In re Cree, Inc. Sec. Litig.*,
333 F. Supp. 2d 461 (M.D.N.C. 2004) ......................................................................10

*In re Green Dot Corp. Sec. Litig.*,
2024 WL 1356253
(C.D. Cal. Mar. 29, 2024) ..................................................................................4, 5, 7

*In re OSI Pharms., Inc. Sec. Litig.*,
2007 WL 9672541
(E.D.N.Y. Mar. 31, 2007) ..................................................................................9, 11, 14

*In re Sanofi Securities Litigation*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015) .........................................................................11

**Page**

*In re WorldCom, Inc. Sec. Litig.*,
   294 F. Supp. 2d 392 (S.D.N.Y. 2003)................................................................................1

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
   146 F.3d 66 (2d Cir. 1998)...............................................................................................4

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) .......................................................................................5, 7

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991).........................................................................................3, 13

*Micholle v. Ophthotech Corp.*,
   2019 WL 4464802
   (S.D.N.Y. Sept. 18, 2019)................................................................................................3

*Nat. Res. Def. Council v. U.S. Food & Drug Admin.*,
   884 F. Supp. 2d 108 (S.D.N.Y. 2012).............................................................................3

*Pitman v. Immunovant, Inc.*,
   2024 WL 964258
   (E.D.N.Y. Feb. 25, 2024)...............................................................................................14

*Reilly v. U.S. Physical Therapy, Inc.*,
   2018 WL 3559089
   (S.D.N.Y. July 23, 2018) ...............................................................................................11

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007)................................................................................. *passim*

*SEC v. Fiore*,
   416 F. Supp. 3d 306 (S.D.N.Y. 2019)..........................................................................5, 7

*SEC v. Glob. Inv. Strategy UK Ltd.*,
   2021 WL 4896127
   (S.D.N.Y. Oct. 19, 2021) .................................................................................................1

*SEC v. MiMedx Grp., Inc.*,
   2022 WL 902784
   (S.D.N.Y. Mar. 28, 2022) ................................................................................................3

*Sharette v. Credit Suisse Int'l*,
   127 F. Supp. 3d 60 (S.D.N.Y. 2015)...............................................................................4

**Page**

*Shupe v. Rocket Co., Inc.*,
  660 F. Supp. 3d 647 (E.D. Mich. 2023)...................................................................................9

*Sira v. Morton*,
  380 F.3d 57 (2d Cir. 2004)...................................................................................................8

*Stolarik v. New York Times Co.*,
  323 F. Supp. 3d 523 (S.D.N.Y. 2018)...................................................................................8

*Talwar v. Staten Island Univ. Hosp.*,
  2016 WL 1298969
  (E.D.N.Y. Mar. 31, 2016) ..................................................................................................14

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*,
  2017 WL 3610584
  (S.D.N.Y. July 26, 2017) ...................................................................................................13

*Wagner v. Royal Bank of Scot. Grp. PLC*,
  2013 WL 4779039
  (S.D.N.Y. Sept. 5, 2013)....................................................................................................14

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
  286 F. Supp. 3d 634 (S.D.N.Y. 2017)..................................................................................4


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(b)(3)(B).....................................................................................................................5

Federal Rule of Civil Procedure
  Rule 12(b)(6).........................................................................................................................3
  Rule 12(d) .............................................................................................................................3
  Rule 56..................................................................................................................................3

17 C.F.R.
  §240.10b5-1 ........................................................................................................................14


**LEGISLATIVE HISTORY**

Private Securities Litigation Reform Act of 1995
  Pub. L. No. 104-67, 109 Stat. 737 (1995).....................................................................2, 5, 7

Lead Plaintiff Clendon T. Rice ("Plaintiff"), respectfully submits this memorandum of law in support of his motion for an Order striking: (i) the Disputed Exhibits (defined below) attached to the Declaration of Francesca Brody, dated March 4, 2024 (ECF 65, the "Brody Declaration"), filed in support of Defendants' Motion to Dismiss the Amended Complaint (ECF 52, the "AC," cited as "¶__");[1] and (ii) references to, and assertions and arguments based on, the Disputed Exhibits in Defendants' memorandum of law, dated March 4, 2024 (ECF 64, cited as "MTD at __"), submitted in support of their motion to dismiss because they are not incorporated by reference or relied upon in the AC or are not subject to judicial notice.[2]

## I.    INTRODUCTION

It is well-established that at the motion to dismiss stage, the Court must accept all well-pled facts as true and draw all reasonable inferences in favor of Plaintiff. *SEC v. Glob. Inv. Strategy UK Ltd.*, 2021 WL 4896127, at *4 (S.D.N.Y. Oct. 19, 2021); *see also In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 428 (S.D.N.Y. 2003) (rejecting defendants' introduction of "evidence and arguments intended to establish [their point]" since "they will have an opportunity to do so at a later stage . . . when it is appropriate to weigh the parties' competing evidentiary submissions[,]" because "[o]n this motion, the plaintiffs' allegations are taken as true").

By this motion, Plaintiff seeks to strike references to: (i) Exhibits 5 and 10, NovoCure's 2022 Form 10-K and Form 8-K dated June 6, 2023 (the "SEC Filings"); (ii) Exhibit 6, a NovoCure Earnings Call Transcript dated February 23, 2023 (the "Earnings Call"); (iii) Exhibits 11, 14-16,

---

[1] "Defendants" refers to NovoCure Limited ("NovoCure" or the "Company") (¶21); William F. Doyle ("Doyle"), NovoCure's Executive Chairman and a Director (¶22); Asaf Danziger ("Danziger"), NovoCure's CEO and a Director (¶23); and Ashley Cordova ("Cordova"), NovoCure's CFO (¶24).

[2] Plaintiff cites the exhibits attached to the Brody Declaration as "Exhibit __." Capitalized terms not defined herein have the meanings ascribed to them in the AC.

various analyst reports published during the Class Period (the "Analyst Reports"); (iv) Exhibit 12, a PowerPoint presentation by Dr. Ticiana Leal *et al.*, given at the 2023 ASCO Annual Meeting (the "ASCO PowerPoint"); (v) Exhibit 13, a ClinicalTrials.gov entry for the study titled *Effect of Tumor Treating Fields (TTFields) (150 kHz) Concurrent With Standard of Care Therapies for Treatment of Stage 4 Non-small Cell Lung Cancer (NSCLC) Following Platinum Failure (LUNAR)* (the "Clinical Trial Entry"); (vi) Exhibits 17-19, excerpts for the prescribing information for KEYTRUDA®, OPDIVO and TECENTRIQ®, respectively (the "Prescription Exhibits"); and (vii) Exhibits 20-24, which consist of Doyle and Cordova's Forms 4 and a NovoCure Proxy Statement dated April 24, 2023 (the "Insider Sales Materials") (collectively, the "Disputed Exhibits").  By including the Disputed Exhibits, Defendants are trying to gain an advantage by cherry-picking and submitting certain documents in support of their motion to dismiss while enjoying the robust privileges of the PSLRA discovery stay, by preventing Plaintiff from developing a fulsome factual record.

Defendants rely on the Disputed Exhibits to contest the facts alleged in the AC in an attempt to rebut Plaintiff's well-pled allegations.  In an effort to develop their own set of facts that are inconsistent with the AC, Defendants have improperly attached 24 exhibits, totaling 542 pages, to their motion to dismiss.  Aside from the fact that these exhibits fail to rebut the allegations in the AC, they are inappropriate for consideration at this stage of the litigation because they were not incorporated by reference in the AC, nor are they integral to the AC.  Moreover, they are not appropriate for judicial notice by the Court because Defendants introduce them for the truth of their contents, not simply for the fact that they exist.  Accordingly, the Disputed Exhibits, and all references to and assertions and arguments based on them in the motion to dismiss briefing, should be stricken.  Alternatively, if the Court considers the extraneous materials offered by Defendants, Plaintiff respectfully requests that Defendants' motion to dismiss be converted to a motion for

summary judgment and the parties be provided with a reasonable opportunity to conduct discovery. *See* Fed. R. Civ. P. 12(d); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016) ("If the court wishes to take account of such materials, however, the Rules oblige it to treat the motion as one for summary judgment under Rule 56 and give all parties a reasonable opportunity to present all the material that is pertinent to the motion.") (internal quotations omitted).

## II.    ARGUMENT

### A.    The Court Should Grant Plaintiff's Motion to Strike

#### 1.    Standards for Considering the Disputed Exhibits

A district court is limited in the material it may consider in deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Courts in this Circuit have repeatedly recognized that federal district courts have "inherent authority to strike any filed paper" they find "improper." *See Nat. Res. Def. Council v. U.S. Food & Drug Admin.*, 884 F. Supp. 2d 108, 115 n.5 (S.D.N.Y. 2012) (collecting cases).  As a general matter, the court "must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *SEC v. MiMedx Grp., Inc.*, 2022 WL 902784, at \*4 (S.D.N.Y. Mar. 28, 2022) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *see also Micholle v. Ophthotech Corp.*, 2019 WL 4464802, at \*6 (S.D.N.Y. Sept. 18, 2019).

The Court may also consider a document "'upon which [the complaint] *solely* relies and which is *integral to the complaint*.'" *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)) (emphasis and brackets added by *Roth* court).  "Where a document is not incorporated by reference, 'the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint.'" *Ophthotech*, 2019 WL 4464802, at \*6 (quoting

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *see also Barron v. Helbiz, Inc.*, 2021 WL 4519887, at \*4 (2d Cir. Oct. 4, 2021) (finding that the district court erred in considering documents that were not integral to the complaint).

Further, the Court is permitted to take judicial notice of "public records that are integral to a fraud complaint [. . .] in considering a Rule 12(b)(6) motion." *Roth*, 489 F.3d at 509. "Such facts must either be '(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998).

However, if the court considers documents that are outside of the four corners of a complaint, the court may consider them "'only to determine *what* the documents stated,' and '*not to prove the truth of their contents*.'" *Roth*, 489 F.3d at 509 (emphasis in original); *see also Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 205 (S.D.N.Y. 2018) (quoting *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 75 (S.D.N.Y. 2015) ("in securities cases involving misrepresentation or misstatement claims, courts in the Second Circuit often take judicial notice of documents filed with the SEC 'only to determine what the documents stated,' and '*not to prove the truth of their contents*'") (emphasis added)). To consider the documents for the truth of their contents would "'permit the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding—one featuring a bespoke factual record, tailor-made to suit the needs of defendants.'" *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 646 n.4 (S.D.N.Y. 2017) (citing *Goel*, 820 F.3d at 560).

Further, courts have recognized the "'concerning pattern in securities cases'" of "'exploitation'" of judicial notice procedures at the pleading stage. *See In re Green Dot Corp. Sec.*

- 4 -

*Litig.*, 2024 WL 1356253, at *3 (C.D. Cal. Mar. 29, 2024) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)).  "[S]ecurities fraud cases such as this one present 'especially significant' risks of 'overuse and improper application of' judicial notice."  *Id*.

Under the PSLRA, defendants in securities fraud actions may either: (i) answer the complaint and engage in discovery; or (ii) move to dismiss the complaint, thus invoking the PSLRA's automatic stay of discovery.  *See* 15 U.S.C. §78u-4(b)(3)(B).  Here, Defendants chose to file a motion to dismiss, utilizing the PSLRA's discovery stay as both a shield and a sword: Defendants submitted extraneous documents with their motion asking the Court to determine substantive factual issues, enjoying the robust privileges of the stay, while preventing Plaintiff from developing a fulsome factual record.  Because none of the Disputed Exhibits are incorporated by reference in the AC or are proper candidates for judicial notice, the Court should strike all references to, and assertions and arguments based on, the Disputed Exhibits.

### 2. The Court Cannot Take Judicial Notice of the SEC Filings or the Prescription Exhibits

Defendants include NovoCure's 2022 Form 10-K and Form 8-K dated June 6, 2023 (Exhibits 5 and 10, respectively) and the Prescription Exhibits (Exhibits 17-19) to improperly introduce factual arguments and contradict the allegations in the AC.  Since Defendants are proffering these exhibits for the truth of the matters asserted therein rather than for what they stated, the Court should decline to consider them.  *Roth*, 489 F.3d at 509.

#### a. SEC Filings

"Although courts may take judicial notice of legally required public disclosure documents filed with the SEC, they may not take judicial notice of the documents for the truth of the matters asserted in them, but rather to establish that the matters had been publicly asserted."  *SEC v. Fiore*, 416 F. Supp. 3d 306, 328-29 (S.D.N.Y. 2019) (cleaned up) (citation, quotation marks, and alterations

- 5 -

omitted).  Defendants introduce the SEC Filings to create their own narrative and to contradict parts of Plaintiff's well-pled complaint.

For example, Defendants include NovoCure's Form 10-K to argue that the Company "had already planned additional trials in NSCLC while LUNAR *was ongoing*, *i.e.*, before the Company knew what the trial results were."  MTD at 42 (emphasis in original).  Defendants also include NovoCure's Form 8-K dated June 6, 2023 to make numerous factual arguments including that: (i) other options for "treatments that extend survival after NSCLC has progressed" were very limited (MTD at 4-5); (ii) that certain results were statistically significant (*id*. at 8); (iii) "PD-L1 expression scores were balanced across the four cohorts" (*id*. at 8, 25); (iv) the "7.7-month survival benefit was the difference between a median survival rate of 18.5 months on the TTFields arm and a median survival rate of 10.8 months on the ICI-only arm" (*id*. at 23); (v) "the likelihood of the reported results occurring if the null hypothesis was true is 3%; the null hypothesis in this case is that the 7.7-month overall survival benefit was not caused by TTFields" (*id*. at 24); and (vi) Doyle had a reasonable basis to make certain statements since the FDA had approved two ICIs "for the second-line treatment of NSCLC *regardless of PD-L1 scores*," and approved the third "for any patient with a PD-L1 score above 1%"[3] (*id*. at 29). (emphasis in original).

Defendants are using the SEC Filings to make inappropriate factual arguments and scientific conclusions including, but not limited to, the balance of PD-L1 scores, interpretation and statistical significance of LUNAR results, and that NovoCure already planned additional trials before the Company knew what the results were.  They also use the SEC Filings to argue defendant Doyle's

---

[3] Defendants also improperly introduce the Prescription Exhibits for this point.  As discussed in more detail below (*see infra* 7-8), the Prescription Exhibits are being proffered for the truth of the matter asserted and should be disregarded.

basis for making certain false and misleading statements. These arguments serve, in part, to tout the LUNAR trial and its results and to dispute the allegations in the AC that LUNAR was marred by serious flaws and missing data that rendered the purportedly favorable results unreliable, uninterpretable, and clinically meaningless, ¶¶58-69, due to the missing PD-L1 data for 45% of patients. ¶¶9, 64. The Court should therefore decline to take judicial notice of the SEC Filings because Defendants are relying on them for their truth, not the fact that they exist. In doing this, Defendants are improperly making conclusions and arguments that requires resolution by experts—not defense counsel. Because considering such statements for their truth would be improper at this stage, the Court should decline to take judicial notice of the information in the SEC Filings. *Fiore*, 416 F. Supp. 3d at 329.

### b.    The Prescription Exhibits

Defendants also submit the Prescription Exhibits which they argue are "properly before the Court for purposes of establishing an action the agency has taken." MTD at 29 n.10 (citing to *Gale v. Smith & Nephew, Inc.*, 989 F. Supp. 2d 243, 246 n.2, 250 n.6 (S.D.N.Y. 2013)).[4] But Defendants are not submitting the Prescription Exhibits for the fact that they exist, *i.e.*, to show that the various medications were approved by the FDA, they are using them to establish that defendant Doyle had a reasonable basis for his statement *since* the "FDA has approved two [of the ICIs] for the second-line treatment of NSCLC *regardless of PD-L1 scores*, and has approved the third for any patient with a

---

[4] Defendants' reliance on *Gale*, is inapposite as that case involved medical malpractice claims which are not subject to the PSLRA discovery stay. 989 F. Supp. 2d at 245. There, the Court took judicial notice of the fact that the "FDA had granted premarket approval two years earlier" of certain surgical components which caused the plaintiff to suffer hip dislocations and other medical issues. *Id.* at 246. Here, Defendants are using the Prescription Exhibits to argue Doyle's state of mind *in light* of the FDA approval of the medications. Taking judicial notice of the Prescription Exhibits would be the exact exploitation of judicial notice procedures in securities cases that the *Khoja* court warned of. *See Green Dot Corp.*, 2024 WL 1356253, at *3 (quoting *Khoja*, 899 F.3d at 998).

PD-L1 score above 1%." MTD at 29 (emphasis in original). In other words, Defendants are attempting to argue defendant Doyle's state of mind and basis for his statements in addition to the fact that the treatments were effective despite the missing data related to the PD-L1 scores. Defendants are therefore impermissibly using the Prescription Exhibits for the truth of their contents and as such, they should be stricken.

### 3.    The Earnings Call, Analyst Reports and ASCO PowerPoint Should Be Stricken

There are only limited references to the Earnings Call (Exhibit 6), the Analyst Reports (Exhibits 11, 14-16), and the ASCO PowerPoint (Exhibit 12) in the AC. *See* ¶¶94, 132 (references to Exhibit 6), ¶119 (reference to Exhibit 11), ¶61 (reference to Exhibit 14), ¶62 (reference to Exhibit 15), ¶60 (reference to Exhibit 16) and ¶113 (reference to Exhibit 12). These references are not sufficient to subject these exhibits to the incorporation by reference doctrine or consider them "integral" to the AC. *See Stolarik v. New York Times Co.*, 323 F. Supp. 3d 523, 537 (S.D.N.Y. 2018) ("a mere passing reference to a document outside of the complaint does not incorporate the document into the complaint"); *Goel*, 820 F.3d at 559 ("[a] document is integral to the complaint where the complaint relies heavily upon its terms and effect" and "[m]erely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotation[s] from the document is not enough") (internal quotations and citations omitted); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents . . . is not enough to incorporate those documents, wholesale, into the complaint."). Therefore, Exhibits 6, 11-12, 14-16 cannot be considered incorporated by reference or integral to the complaint. As discussed below, each of these exhibits also fails to satisfy the requirements of the judicial notice doctrine.

### a.      The Earnings Call

Since the Earnings Call was not incorporated by reference or integral to the complaint, it may only be considered under the doctrine of judicial notice.  The Court, however, cannot take judicial notice of the Earnings Call for two reasons.  First, a conference call transcript is not a proper subject for judicial notice because it is "not a matter of public record like an SEC filing [. . .] [n]or is it otherwise capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned." *In re OSI Pharms., Inc. Sec. Litig.*, 2007 WL 9672541, at *5 (E.D.N.Y. Mar. 31, 2007) (quotations omitted); *see also In re Chembio Diagnostics, Inc. Sec. Litig.*, 586 F. Supp. 3d 199, 216 (E.D.N.Y. 2022) (declining to take judicial notice of the transcript of a company's earnings call that was "only briefly quote[d]" and was not "publicly available in a manner that would allow [the court] to take judicial notice").

Second, Defendants are using the contents of the Earnings Call for the truth of the matter asserted.  Defendants include the Earnings Call to argue that certain of the challenged statements related to the TTFields' prospects are non-actionable expressions of corporate optimism because when NovoCure made those statements, "it expected to receive and report results for three major trials in addition to LUNAR" which tested the TTFields' efficacy in treating ovarian cancer, pancreatic cancer, and brain metastases.  MTD at 33.  Defendants are therefore impermissibly using the Earnings Call for the truth of its contents and it should therefore be stricken.

### b.      The Analyst Reports Should Be Stricken

Similarly, the Court should also disregard the Analyst Reports.  An "[analyst] report is not a public record or subject to judicial notice." *Shupe v. Rocket Co., Inc.*, 660 F. Supp. 3d 647, 664 (E.D. Mich. 2023) ("The Wedbush [analyst] Report is reasonably disputable.  While purporting to be 'based on sources that the analysts consider reliable,' the Report 'reflects the analysts' personal

opinions,' and 'its accuracy is not guaranteed.'"); *see also City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 289 (S.D.N.Y. 2013) (granting plaintiff's motion to strike exhibits including analyst reports); *In re Cree, Inc. Sec. Litig.*, 333 F. Supp. 2d 461, 470 (M.D.N.C. 2004) (finding it improper to consider articles including a short seller report on a motion to dismiss).

Even if the Court were to judicially notice the Analyst Reports, it could not consider them for the truth of the matters asserted—the exact reason for which Defendants submit them. For example, Defendants use the Analyst Reports to further their arguments regarding the publicly available information about LUNAR by placing great weight on the scientific conclusions and interpretation of LUNAR trial results of financial analysts—whose job is to analyze the company's stock price, not interpret clinical trial results. Defendants make much of the analysts' conclusions related to the overall survival benefit on the ICI arm (MTD at 8), the trial design (*id*. at 20) and opinions on skewed results related to a potential imbalance of treatment vs. control arms (*id*. at 21). Defendants are therefore improperly submitting the Analyst Reports for the truth of the matter asserted. *See Kinross*, 957 F. Supp. 2d at 289 (striking analyst reports because they would be "of no assistance to [defendant] except if taken for the truth"). Because the Analysts Reports are not judicially noticeable and because they are being proffered for the truth of the matter asserted, they should be stricken.

### c.    The ASCO PowerPoint

Defendants also improperly ask the Court to consider Exhibit 12, the PowerPoint Presentation by Dr. Ticiana Leal, given at the 2023 ASCO Annual meeting, for the truth of its contents. Specifically, Defendants cite the ASCO PowerPoint to argue that that "[a]vailable PD-L1 data showed no differences between arms." MTD at 8. "[D]ocuments from a presentation given at a conference held by a private organization are, at best, a questionable subject for judicial notice."

*OSI Pharms*, 2007 WL 9672541, at *5 (declining to take judicial notice of an ASCO presentation); *see also Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *10 (S.D.N.Y. July 23, 2018) (declining to judicially notice exhibits that supported complex substantive arguments); *Kinross*, 957 F. Supp. 2d at 289.  Since the ASCO PowerPoint cannot be considered incorporated by reference to the AC and is not a candidate for judicial notice, it should be stricken.  If the Court declines to strike the presentation, the Court should disregard Defendants' reliance on it for the truth of the matter asserted—that available PD-L1 data was balanced among the trial groups—especially because this reflects NovoCure's self-interested *post-hoc* stratification of the PD-L1 data.

### 4.    The Clinical Trial Entry Should Be Stricken

Defendants argue that publicly available "information from the government's clinical trial database is properly before the Court."[5]   MTD at 19 n.8.  In doing so, however, Defendants impermissibly ask this Court to accept their self-serving interpretation of investors' knowledge of the LUNAR trial eligibility criteria set forth in the Clinical Trial Entry.  Not only do Defendants ask the Court to consider the Clinical Trial Entry, they also ask the Court to accept as true the factual assertions contained therein.  By submitting the Clinical Trial Entry and using it to make fact-intensive arguments about what investors understood, Defendants raise contested factual issues that are not appropriate for resolution on a motion to dismiss.  As such, the Court should strike the Clinical Trial Entry.

The Clinical Trial Entry appears nowhere in the AC nor was it relied upon in drafting the AC.  Therefore, this exhibit cannot be considered "integral to the complaint."  *See Roth*, 489 F.3d at 509.  As such, Defendants cannot rely on the incorporation by reference doctrine for the Clinical

---

[5]  Defendants rely on *In re Sanofi Securities Litigation*, where plaintiffs did not seek to strike any of the exhibits submitted by defendants.  87 F. Supp. 3d 510, 540 (S.D.N.Y. 2015) (MTD at 19, 34).

Trial Entry. *See DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 457 (S.D.N.Y. 2018) (declining to consider documents that were "extrinsic to the complaint" because "Plaintiffs [did] not cite to them in their pleading, and it is far from apparent that Plaintiffs relied on those documents in drafting the [] amended complaint"). Defendants acknowledge in their memorandum of law that the Clinical Trial Entry is not attached to or referenced in the AC. *See* MTD at 19 (providing no citations to paragraphs in the AC).

Defendants specifically argue that the website showed that "prior treatment with platinum-based chemotherapy was a LUNAR eligibility requirement—but that prior treatment with a checkpoint inhibitor was not." *Id*. Defendants thus improperly rely on the Clinical Trial Entry to show that investors knew that patients were not required to have received prior treatment with an immune checkpoint inhibitor ("ICI"). But this ignores that patients *could have* previously received an ICI *along with* platinum-based chemotherapy—as was a standard practice. Investors had no reason to expect otherwise.

Moreover, it is unclear when the information Defendants point to was included on the website, since Defendants' excerpt of the LUNAR clinical trial excludes the "Record History" tab. *See* https://www.clinicaltrials.gov/study/NCT02973789?tab=history (showing at least 10 post-Class Period updates and two updates during the Class Period). Because the Clinical Trial Entry is not an appropriate candidate for judicial notice, it should be stricken. At a minim, Defendants' factual arguments based on it should be disregarded.

**5.      The Insider Sales Materials Should Be Stricken[6]**

The Insider Sales Materials are comprised of Exhibits 20-24 which are: (i) Defendant Cordova's Statement of Changes in Beneficial Ownership (SEC Form 4) dated March 2, 2023; (ii) defendant Cordova's Statement of Changes in Beneficial Ownership (SEC Form 4) dated March 6, 2023; (iii) Defendant Cordova's Statement of Changes in Beneficial Ownership (SEC Form 4) dated March 7, 2023; (iv) defendant Doyle's Statement of Changes in Beneficial Ownership (SEC Form 4) dated August 3, 2022; and (v) a Proxy Statement (Schedule 14A) of NovoCure, dated April 24, 2023.  Defendants use defendant Cordova's SEC Forms 4 to argue that "[a]ll of Cordova's sales were made automatically to cover tax liability that arose when stock rights vested."  MTD at 38.  Similarly, Defendants use Doyle's SEC Form 4 and the Proxy Statement to introduce that Doyle "held a vast amount of NovoCure stock without a single alleged sale during the class period."  *Id*. at 40-41.  In doing so, Defendants are improperly asking the Court to credit the truth of the assertions contained in these exhibits—otherwise submitting them would serve no purpose.  The Court can consider them "'only to determine *what* the documents stated,'" and "'*not to prove the truth of their contents*.'"  *Roth*, 489 F.3d at 509 (emphasis in original) (quoting *Kramer*, 937 F.2d at 774); *see also U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 2017 WL 3610584, at *10 (S.D.N.Y. July 26, 2017) ("[I]n those cases in which SEC filings have been found judicially noticeable, the Court considered the documents 'only to determine what the documents stated,' and '*not to prove the truth of their contents*.'") (emphasis in original).

---

[6]  The Insider Sales Materials appear nowhere in the AC nor were they relied upon in drafting the AC.  Therefore, these exhibits cannot be considered "integral to the complaint."  *See Roth*, 489 F.3d at 509; *see also supra* 11-12.

A Form 4 cannot be considered on a motion to dismiss to establish the truth of the matters asserted therein. *Wagner v. Royal Bank of Scot. Grp. PLC*, 2013 WL 4779039, at *3-*5 (S.D.N.Y. Sept. 5, 2013) (rejecting defendants' reliance on a Form 4); *see also OSI Pharms*, 2007 WL 9672541, at *12 ("At most, however, these Forms 4 show a mechanical pattern of stock sales. They do not prove that these trades were made pursuant to Rule 10b5-1 plans, nor do they prove that, assuming arguendo that the trades were made pursuant to such plans, the Individual Defendants did not make the allegedly misleading statements with the required degree of scienter."); *Pitman v. Immunovant, Inc.*, 2024 WL 964258, at *1 n.3 (E.D.N.Y. Feb. 25, 2024) (accepting plaintiff's argument that a "Form 4 cannot be considered on a motion to dismiss to establish the truth of the matters asserted therein").  Because the import of the Insider Sales Materials is subject to reasonable dispute, the Court should decline to judicially notice these materials. *See Kinross*, 957 F. Supp. 2d at 288 (judicial notice is inappropriate where "the causal connection that defendants posit is plausibly subject to dispute").  Accordingly, the Insider Sales Materials should be stricken.

**B.      References to, and Assertions and Arguments Based on, the Disputed Exhibits Should Be Stricken from Defendants' Motion to Dismiss**

Because the Court should strike the Disputed Exhibits, references to, and assertions and arguments based on, the Disputed Exhibits should also be stricken from Defendants' memorandum of law in support of their motion to dismiss. *See, e.g.*, *Talwar v. Staten Island Univ. Hosp.*, 2016 WL 1298969, at *7 (E.D.N.Y. Mar. 31, 2016) (striking declaration submitted in support of a motion and "all exhibits thereto, and all arguments based on that evidence").

**III.    CONCLUSION**

Thus, because the Disputed Exhibits cited by Defendants are extraneous to the AC and are not subject to judicial notice, Plaintiff respectfully requests that the Court grant the motion and strike the Disputed Exhibits and all references to, and all assertions and arguments based on, the Disputed

- 14 -

Exhibits in Defendants' motion to dismiss brief, or, in the alternative, permit Plaintiff to conduct full

and complete fact and expert discovery and then proceed to summary judgment.

DATED:  May 6, 2024                              Respectfully submitted,

                                                ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
                                                SAMUEL H. RUDMAN
                                                DAVID A. ROSENFELD
                                                ERIN W. BOARDMAN
                                                MAGDALENE ECONOMOU


                                                        */s/ Erin W. Boardman*
                                                ERIN W. BOARDMAN

                                                58 South Service Road, Suite 200
                                                Melville, NY  11747
                                                Telephone:  631/367-7100
                                                631/367-1173 (fax)
                                                srudman@rgrdlaw.com
                                                drosenfeld@rgrdlaw.com
                                                eboardman@rgrdlaw.com
                                                meconomou@rgrdlaw.com

                                                *Lead Counsel for Lead Plaintiff*