**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WILLIAM E. BAZZELLE, SR., individually
and on behalf of all others similarly situated,

No. 1:23-cv-05146-GHW

                              Plaintiff,

        vs.

NOVOCURE LIMITED, WILLIAM DOYLE,
ASAF DANZIGER and ASHLEY CORDOVA,

                              Defendants.


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO STRIKE EXHIBITS**
**SUBMITTED WITH DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

I.     EXHIBITS 5, 6, 10, 11, 12, 14, 15, 16, AND 20–24 ARE INCORPORATED BY
REFERENCE INTO THE COMPLAINT, INTEGRAL TO THE COMPLAINT, AND
SUBJECT TO JUDICIAL NOTICE ................................................................................... 2

     A.     The Documents Containing the Challenged Statements (Exhibits 5 and 6) Are
Properly Before the Court ................................................................................... 4

     B.     The Documents Containing the Alleged Corrective Disclosures (Exhibits 10 and
12) Are Properly Before the Court ...................................................................... 7

     C.     The Analyst Reports (Exhibits 11, 14, 15, 16) Are Properly Before the Court.... 10

     D.     The SEC Filings Containing Stock Sale Information (Exhibits 20–24) Are
Properly Before the Court ................................................................................... 12

II.    THE COURT MAY TAKE JUDICIAL NOTICE OF EXHIBITS 13 AND 17–19
BECAUSE THEY ARE GOVERNMENT RECORDS FROM THE FDA AND NIH ... 16

CONCLUSION ............................................................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abely v. Aeterna Zentaris Inc.*,
   2013 WL 2399869 (S.D.N.Y. May 29, 2013) ...........................................................18

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
   28 F.4th 343 (2d Cir. 2022) ..................................................................... *passim*

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
   763 F. Supp. 2d 423 (S.D.N.Y. 2011).................................................................12, 13

*In re Bristol-Myers Squibb Sec. Litig.*,
   312 F. Supp. 2d 549 (S.D.N.Y. 2004)..................................................................13, 14

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)......................................................................................2

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
   957 F. Supp. 2d 277 (S.D.N.Y. 2013)............................................................ *passim*

*Colbert v. Rio Tinto PLC*,
   824 F. App'x 5 (2d Cir. 2020) .................................................................................11

*In re Cree, Inc. Sec. Litig.*,
   333 F. Supp. 2d 461 (M.D.N.C. 2004) ...................................................................12

*In re DraftKings Inc. Sec. Litig.*,
   650 F. Supp. 3d 120 (S.D.N.Y. 2023)................................................................12, 13

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*,
   551 F. Supp. 2d 210 (S.D.N.Y. 2008)..........................................................5, 6, 7, 8

*Fries v. N. Oil & Gas, Inc.*,
   285 F. Supp. 3d 706 (S.D.N.Y. Jan. 11, 2018) ......................................................13

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011)......................................................................13

*Goel v. Bunge, Ltd.*,
   820 F.3d 554 (2d Cir. 2016)...............................................................................6, 18

*In re Green Dot Corp. Sec. Litig.*,
   2024 WL 1356253 (C.D. Cal. Mar. 29, 2024).........................................................17

ii

*Housey v. Proctor & Gamble Co.*,
2022 WL 17844403 (2d Cir. Dec. 22, 2022) ...........................................................................3

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
936 F.2d 759 (2d Cir. 1991).....................................................................................................1

*In re Keryx Biopharm., Inc. Sec. Litig.*,
2014 WL 585658 (S.D.N.Y. Feb. 14, 2014)......................................................................13, 14

*In re Keyspan Corp. Sec. Litig.*,
383 F. Supp. 2d 358 (E.D.N.Y. Mar. 21, 2003).....................................................................13

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ................................................................................................17

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991).....................................................................................................1

*Micholle v. Ophthotech Corp.*,
2019 WL 4464802 (S.D.N.Y. Sept. 17, 2019)....................................................................6, 13

*In re OSI Pharm., Inc. Sec. Litig.*,
2007 WL 9672541 (E.D.N.Y. Mar. 31, 2007)......................................................................9, 16

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
153 F. Supp. 3d 628 (S.D.N.Y. 2015).....................................................................................6, 7

*In re Philip Morris Int'l Inc. Sec. Litig.*,
2021 WL 4135059 (S.D.N.Y. Sept. 10, 2021).....................................................................4, 17

*Pitman v. Immunovant, Inc.*,
2024 WL 1342737 (E.D.N.Y. Mar. 29, 2024)........................................................................16

*Pitman v. Immunovant, Inc.*,
2024 WL 964258 (E.D.N.Y. Feb. 25, 2024).....................................................................15, 16

*In re Plug Power, Inc. Sec. Litig.*,
2022 WL 4631892 (S.D.N.Y. Sept. 29, 2022).......................................................................12

*Reilly v. U.S. Physical Therapy, Inc.*,
2018 WL 3559089 (S.D.N.Y. July 23, 2018) .........................................................................9

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007)................................................................................................3, 15

*Saskatchewan Healthcare Emp's Pension Plan v. KE Holdings Inc.*,
– F. Supp. 3d –, 2024 WL 775195 (S.D.N.Y. Feb. 26, 2024) ............................................6, 7

*Sharette v. Credit Suisse Int'l*,
127 F. Supp. 3d 60 (S.D.N.Y. 2015)..................................................................................9, 17

*Shupe v. Rocket Cos., Inc.*,
660 F. Supp. 3d 647 (E.D. Mich. 2023)...........................................................................10, 12

*Sira v. Morton*,
380 F.3d 57 (2d Cir. 2004)................................................................................................6, 14

*In re Skechers USA, Inc. Sec. Litig.*,
444 F. Supp. 3d 498 (S.D.N.Y. 2020)..............................................................................12, 13

*Stadnick v. Vivint Solar, Inc.*,
2015 WL 8492757 (S.D.N.Y. Dec. 10, 2015) ........................................................................10

*Stolarik v. New York Times Co.*,
323 F. Supp. 3d 523, 538 (S.D.N.Y. 2018)........................................................................6, 14

*Sun v. TAL Educ. Grp.*,
2023 WL 6394413 (S.D.N.Y. Sept. 29, 2023)........................................................................10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007).................................................................................................................2

*Tung v. Bristol-Myers Squibb Co.*,
2020 WL 5849220 (S.D.N.Y. Sept. 30, 2020)..........................................................................8

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*,
2017 WL 3610584 (S.D.N.Y. July 26, 2017) .........................................................................15

*Wagner v. Royal Bank of Scotland Grp. PLC*,
2013 WL 4779039 (S.D.N.Y. Sept. 5, 2013)..........................................................................15

*In re WorldCom, Inc. Sec. Litig.*,
294 F. Supp. 2d 392 (S.D.N.Y. 2003).....................................................................................13

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
286 F. Supp. 3d 634 (S.D.N.Y. 2017) ....................................................................................18

**Other Authorities**

17 C.F.R. § 249.104 ................................................................................................................14

## PRELIMINARY STATEMENT

Defendants filed 24 exhibits in connection with their motion to dismiss. All are properly before the Court. Plaintiff quoted or cited the majority of the exhibits, which are accordingly incorporated by reference in or integral to the complaint. The remaining exhibits are records from government sources subject to judicial notice.

In his Motion to Strike ("MTS"), Plaintiff asks the Court to disregard 17 of the 24 exhibits. Most are the very documents on which Plaintiff's claims are based. They contain the challenged statements, analyst reports, and purported corrective disclosures Plaintiff cites in the complaint. Second Circuit law does not allow Plaintiff's gambit. "[I]t is highly impractical and inconsistent with Fed. R. Evid. 201 to preclude a district court from considering such documents" cited and relied on by a plaintiff, but not attached to the complaint "when faced with a motion to dismiss a securities action based on allegations of material misrepresentations or omissions." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see also I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) (plaintiff cannot "evade a properly argued motion to dismiss simply" by choosing "not to attach [an integral document] to the complaint or to incorporate it by reference").

Four of the 17 documents at issue contain the challenged statements or purported corrective disclosures. This includes NovoCure's 2022 Form 10-K (Exhibit 5), a February 23, 2023 earnings call transcript (Exhibit 6), and the Company's June 6, 2023 press release and ASCO presentation materials (Exhibits 10 and 12). Another four documents are analyst reports Plaintiff cites and quotes in an effort to show fraud (Exhibits 11, 14, 15, 16). Five additional documents are mandatory SEC filings reporting stock sales Plaintiff cites or other stock transactions necessary to evaluate Plaintiff's allegations (Exhibits 20–24). All 13 of these documents are incorporated by reference, integral to the complaint, and subject to judicial notice.

The remaining four exhibits at issue are FDA prescription labels for the three ICI drugs used in LUNAR (Exhibits 17–19) and the National Institutes of Health's online record reflecting the LUNAR trial protocol (Exhibit 13). All are subject to judicial notice as records from government sources whose authenticity, accuracy, and relevance cannot reasonably be questioned.

## ARGUMENT

I.    **EXHIBITS 5, 6, 10, 11, 12, 14, 15, 16, AND 20–24 ARE INCORPORATED BY REFERENCE INTO THE COMPLAINT, INTEGRAL TO THE COMPLAINT, AND SUBJECT TO JUDICIAL NOTICE**

Exhibits 5, 6, 10, 11, 12, 14, 15, 16, and 20 through 24 are all properly before the Court because Plaintiff relied on these documents. The documents are accordingly incorporated by reference into the complaint and integral to it. The exhibits are also all subject to judicial notice.

All are thus properly before the Court on Defendants' motion to dismiss. The Supreme Court has recognized the propriety of considering such documents at the pleading stage of securities actions. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[S]ources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss" include "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (similar). Plaintiff cannot prevent the Court from considering the very documents he relies on in alleging securities law violations.

Contrary to Plaintiff's contention, *see* MTS at 4, the Court may consider such documents "for the truth of their contents" if they are incorporated by reference or integral to a plaintiff's complaint. *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 n.3 (2d Cir. 2022) ("*Bristol-Myers*") (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)). Plaintiff argues that the Court may consider these documents "'only to determine *what* the documents stated,' and '*not to prove the truth of their contents*.'" MTS at 4 (quoting *Roth*, 489 F.3d at 509).

2

That is not the law.  *Roth*, on which Plaintiff relies, stated that "it is appropriate for the court, in considering a Rule 12(b)(6) motion [in a securities fraud case], to examine" the full text of documents containing the alleged statements "to see whether or not [allegedly omitted] facts were disclosed" and "whether [a particular] representation was made."  *Roth*, 489 F.3d at 509.  *Roth* did not hold that courts may not consider documents for the truth of their contents where a plaintiff incorporates them by reference—and where they contradict a plaintiff's pleading.

Indeed, the Second Circuit made clear in *Bristol-Myers* that, under *Roth*, district courts ruling on motions to dismiss *can* consider incorporated or integral documents for the truth of their contents, including to "contradict" a plaintiff's "selective quotation" of a document.  28 F.4th at 352 n.3; *see also Housey v. Proctor & Gamble Co.*, 2022 WL 17844403, at *2 (2d Cir. Dec. 22, 2022) ("where a document is referenced in a complaint, the documents control and the Court need not accept as true the allegations in the complaint that are inconsistent with these documents") (cleaned up; citation omitted).  Under Second Circuit law, Defendants may use the challenged exhibits to show that the documents Plaintiff cites in the complaint contradict his allegations.

Plaintiff further argues that considering the exhibits would be contrary to the PSLRA discovery stay.  MTS at 2, 5.  That is also wrong.  The discovery stay prohibits investor plaintiffs from fishing for internal company documents and imposing a lopsided discovery burden on a defendant before a court has assessed the legal validity of the claim.  It does not prevent issuer defendants from submitting to a court the public documents on which a complaint is based.  Notably, Plaintiff does not and could not argue that the challenged exhibits were unavailable to him as a result of the discovery stay.  Again, they are the very bases of his allegations.

3

A.      **The Documents Containing the Challenged Statements (Exhibits 5 and 6) Are Properly Before the Court**

Plaintiff moves to strike NovoCure's 2022 Form 10-K and the transcript of its February 23, 2023 earnings call.  Plaintiff cites and quotes both documents in the complaint.  *E.g.*, ¶¶ 92–93 (referring to Ex. 5); ¶¶ 94, 95, 97, 99 (referring to Ex. 6).[1]  Documents that a plaintiff "quotes and relies upon" are incorporated by reference.  *E.g.*, *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 302 n.7 (S.D.N.Y. 2013) ("*Kinross*").  The Court can also take judicial notice of the documents to ascertain what Defendants told investors.  *Bristol-Myers*, 28 F.4th at 352 (judicial notice of documents appropriate to evaluate company's statements).

**Exhibit 5**:  Exhibit 5 is NovoCure's 2022 Form 10-K, dated February 23, 2023.  It contains Defendants' description of the LUNAR study, including challenged statements about LUNAR's topline results.  Ex. 5 at 8–9.  Courts ruling on motions to dismiss securities claims may consider "facts drawn from 'legally required public disclosure documents filed with the SEC' and from various other documents, incorporated into the complaint by reference, that contain the statements that Plaintiffs allege were false or misleading."  *In re Philip Morris Int'l Inc. Sec. Litig.*, 2021 WL 4135059, at *1 (S.D.N.Y. Sept. 10, 2021) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)), *aff'd* 89 F.4th 408 (2d Cir. 2023).  Plaintiff does not argue that Exhibit 5 is *not* incorporated by reference into and integral to the complaint.

Plaintiff nevertheless moves to strike Exhibit 5, arguing that Defendants have improperly submitted the document for the truth of the matter asserted—that the KEYNOTE B36 pilot study was underway while LUNAR was ongoing.  MTS at 6–7; Mot. to Dismiss at 42.  Plaintiff is wrong.  The Court need only consider the fact that NovoCure reported on the pilot study as part of the same discussion in which it made the challenged statements.  In moving to dismiss, Defendants

---

[1] "¶ _" citations in this brief refer to the paragraphs of the Amended Complaint, Dkt. 52.

pointed to the study in response to Plaintiff's inaccurate speculation that NovoCure launched additional pivotal trials of TTFields as a treatment for NSCLC because it was concerned about the purported "implications of LUNAR's significant issues." Mot. to Dismiss at 42; ¶ 134; *see also* ¶ 112. The reference to the pilot study shows that Plaintiff's speculation is based on an incomplete reading of Defendants' disclosures, and the Court can consider the complete document because it contradicts Plaintiff's assertion. *Bristol-Myers*, 28 F.4th at 352 (judicial notice of statements in analyst reports proper to evaluate plaintiff's selective quotation of other analyst reports). The Form 10-K discloses that the pilot study was planned and ongoing long before Plaintiff alleges NovoCure received LUNAR data at the end of 2022. ¶ 47. Given the context of NovoCure's report on the pilot study in February 2023, the Company's later, June 2023 disclosure of yet other studies does not support Plaintiff's speculation that NovoCure planned the latter trials only because it "recognized the implications of LUNAR's significant issues." ¶ 134.

**Exhibit 6**: Exhibit 6 is the transcript of NovoCure's February 23, 2023 earnings call. It contains several of the challenged statements. ¶¶ 94–95, 97–100, 132. It is incorporated by reference under *Kinross*, 957 F. Supp. 2d at 302 n.7, and subject to judicial notice under *Bristol-Myers*, 28 F.4th at 352. *Supra* at 4.

Plaintiff nevertheless argues that the transcript is not properly before the Court because the complaint includes "only limited references" to it. MTS at 8. Plaintiff is wrong. He cites Exhibit 6 throughout the complaint. ¶¶ 94, 95, 97, 99 (all referring to statements in the transcript). He has thereby incorporated it by reference into the complaint. *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 217 n.1 (S.D.N.Y. 2008) (memorandum and newspaper article incorporated by reference because the complaint "directly quotes" them, "indicating that the plaintiffs relied upon these materials in bringing this suit"); *Kinross*, 957 F. Supp. 2d at 302 n.7

("[B]ecause the Amended Complaint quotes and relies upon statements [defendant] made . . . during the conference calls with analysts, the Court may properly consider the full transcripts of those calls . . . .").

Plaintiff continues to refer to the statements in Exhibit 6 in his opposition to Defendants' motion to dismiss, which confirms the centrality of the document to his complaint. Opp. to Mot. to Dismiss at 7–9, 16–17, 22 n.9, 23–24, 27, 33, 38, 42 n.27 (referring to challenged statements in the transcript, including "clinically meaningful" and "profound"). The transcript is "the sole factual support for alleging material omissions" in the earnings call memorialized there, and is therefore "integral" to the complaint. *Edison Fund*, 551 F. Supp. 2d at 217 n.1 (citing *Chambers*, 282 F.3d at 153); *see also Saskatchewan Healthcare Emp's Pension Plan v. KE Holdings Inc.*, – F. Supp. 3d –, 2024 WL 775195, at *17 (S.D.N.Y. Feb. 26, 2024) (document is "integral" when "the complaint relies heavily upon its terms and effect" and there is no dispute about its authenticity, accuracy, or relevance).[2]

In the face of this authority, Plaintiff further contends that a conference call transcript is not a proper subject of judicial notice. MTS at 9. That is flatly wrong. Plaintiff's own authorities recognize that courts may take judicial notice of investor call transcripts in ruling on motions to dismiss in securities litigation. *Micholle v. Ophthotech Corp.*, 2019 WL 4464802, at *10 n.11 (S.D.N.Y. Sept. 17, 2019) (cited in MTS at 3) (taking judicial notice of full transcript of investor conference call where complaint quoted from one portion of it); *see also Pehlivanian v. China*

---

[2] Plaintiff's authorities are not contrary. *See* MTS at 8. Indeed, several confirm that the exhibits at issue here are incorporated by reference. In *Stolarik v. New York Times Co.*, the court found that a collective bargaining agreement not attached to the complaint was incorporated by reference "because [it] provides the factual premise for Plaintiff's Third and Tenth Causes of Action." 323 F. Supp. 523, 538 (S.D.N.Y. 2018). In *Sira v. Morton*, the Second Circuit held that a disciplinary order not expressly cited in the complaint was incorporated by reference because it was "integral to [plaintiff's] ability to pursue a § 1983 challenge." 380 F.3d 57, 67 (2d Cir. 2004). Meanwhile, *Goel v. Bunge, Ltd.* is simply inapposite. 820 F.3d 554 (2d Cir. 2016). The Second Circuit there held that the district court erred in considering a deposition transcript and affidavit from separate actions; those documents were not the source of allegations in the complaint. *Id.* at 559–60.

*Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 643 (S.D.N.Y. 2015) (taking judicial notice of earnings call transcripts).

Plaintiff finally argues that the Court should not consider the earnings call transcript for the truth of the matter asserted—namely, that NovoCure expected to receive, over the next two years, results from clinical trials studying the use of TTFields to treat cancers other than NSCLC. MTS at 9.  But the truth of that matter is not in dispute.  Plaintiff does not contest that NovoCure was conducting the clinical trials to which it referred, nor that it expected to receive results over the next two years.  That fact constitutes the necessary context for the challenged statements, which are about the Company's excitement at the prospect.  Plaintiff's claim is that NovoCure's enthusiasm about receiving trial results was ill-founded given the purported flaws in LUNAR— not that NovoCure was not expecting to receive results.  ¶¶ 78–79, 82–83, 90–91.  Plaintiff appears to be challenging this exhibit simply for the sake of doing so.

### B.   The Documents Containing the Alleged Corrective Disclosures (Exhibits 10 and 12) Are Properly Before the Court

Exhibit 10 is a Form 8-K filed on June 6, 2023.  Exhibit 12 is a slide deck used at a presentation at the ASCO conference the same day.  These documents contain the purported corrective disclosures.  ¶¶ 113–18 (under heading: "The Truth Is Revealed"); *see also* Opp. to Mot. to Dismiss at 12 (arguing that the ASCO presentation revealed "shortcomings with the LUNAR data").  As discussed, documents that a plaintiff relies on in bringing suit are properly before the Court on a motion to dismiss.  *Edison Fund*, 551 F. Supp. 2d at 217 n.1; *Saskatchewan Healthcare*, 2024 WL 775195, at *17; *supra* at 5–6.

Plaintiff does not dispute that Exhibit 10, the Form 8-K, is incorporated by reference and integral to the complaint.  He nonsensically objects to the Court's consideration of the very reports of trial results he quotes in the complaint.  *Compare* MTS at 6 (objecting to Defendants' reference

to Exhibit 10 for the point that "the 7.7-month survival benefit was the difference between a median survival rate of 18.5 months on the TTFields arm and a median survival rate of 10.8 months on the ICI-only arm"), *with* ¶ 110 (quoting Exhibit 10 for the proposition that "the 66 patients who received TTField therapy together with an ICI 'demonstrated a median [overall survival] of 18.5 months' compared to '10.8 months' for the '68 patients treated with ICIs alone'—an overall survival benefit of 7.7 months") (alteration in the complaint).  Such objections do nothing but create unnecessary work for Defendants and the Court.

As to Exhibit 12, Plaintiff argues again that he has made "only limited references" to it, which were insufficient for the document to be incorporated by reference or considered "integral" to the complaint.  MTS at 8.  But a document containing the corrective disclosure *is* integral to a Section 10(b) complaint; the contention that the truth was revealed by means of a document makes it part of the "sole factual support for alleging material omissions."  *Edison Fund*, 551 F. Supp. 2d at 217 n.1.  Courts have held that clinical research presentations are incorporated by reference even when the presentations of which they are a part play a far lesser role in securities litigation.  *Tung v. Bristol-Myers Squibb Co.*, 2020 WL 5849220, at *6 (S.D.N.Y. Sept. 30, 2020) (non-party research presentation incorporated by reference because plaintiff cited to remarks from the presentation in one paragraph of the complaint), *aff'd*, 28 F.4th 343 (2d Cir. 2022).  Exhibit 12 is incorporated by reference into and integral to the complaint.

Plaintiff next complains that Exhibit 12 is not subject to judicial notice because ASCO is a "conference held by a private organization."  *See* MTS at 10 (cleaned up).  Of course, if Exhibit 12 is incorporated by reference, it need not additionally be subject to judicial notice.  One or the other doctrine places the document before the Court; Defendants do not need to prevail on both. In any event, Plaintiff raises no question about the authenticity or accuracy of the slide deck, and

judicial notice is appropriate for facts "not subject to reasonable dispute." *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 75 (S.D.N.Y. 2015).  Plaintiff himself quotes statements Dr. Leal, the LUNAR primary investigator, made during the very presentation to which he objects. ¶ 113.  None of Plaintiff's authorities holds that courts may not take judicial notice of materials cited in a complaint and containing purported corrective disclosures.  MTS at 10–11.  In each of the decisions Plaintiff cites, MTS at 10–11, the court declined to take judicial notice of materials *not* cited in the complaint.[3]

Plaintiff finally contends that the Court should disregard both Exhibit 10 and Exhibit 12 because Defendants are purportedly relying on them for the truth of the matter asserted.  MTS at 5–7, 10–11.  Plaintiff is wrong.  Defendants submitted the documents not for the truth of the matter asserted but to show market awareness.  One of Plaintiff's two principal theories of fraud is that investors will never be able to rule out the possibility that the blockbuster 7.7-month overall survival benefit was caused by an imbalance in PD-L1 scores across the control and treatment arms, rather than by the efficacy of TTFields. ¶ 64; Mot. to Dismiss at 9–10.  Defendants submitted the ASCO presentation to show that investors and medical professionals were provided with information to assess that possibility—both data showing an even distribution of PD-L1 scores for the 55% of the patients whose scores were collected, and standard statistical tools that enable reviewers of scientific experiments to assess the likelihood of false positives and the probability that results were produced by chance.  Mot. to Dismiss at 23–25.  Defendants submitted the data to show what NovoCure told the market about uncertainty and risk—not for the truth of the matter asserted.  That is entirely appropriate.  *Bristol-Myers*, 28 F.4th at 352 (courts may take judicial notice of press coverage, lawsuits, regulatory filings, analyst reports, and scientific publications to

---

[3] *See Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *10 n.14 (S.D.N.Y. July 23, 2018); *Kinross*, 957 F. Supp. 2d at 286–89; and *In re OSI Pharm., Inc. Sec. Litig.*, 2007 WL 9672541, at *5 (E.D.N.Y. Mar. 31, 2007)).

ascertain what information was in the market).  Exhibits 10 and 12 are properly before the Court for all purposes for which Defendants have submitted them.

### C.   The Analyst Reports (Exhibits 11, 14, 15, 16) Are Properly Before the Court

Exhibits 11, 14, 15, and 16 are analyst reports Plaintiff cites and quotes in the complaint. ¶ 119 (citing Ex. 11); ¶ 61 (citing Ex. 14); ¶ 62 (citing Ex. 15); ¶ 60 (citing Ex. 16).  Courts routinely hold that analyst reports cited in Section 10(b) complaints are properly considered on a motion to dismiss.  *E.g.*, *Sun v. TAL Educ. Grp.*, 2023 WL 6394413, at *1 n.1 (S.D.N.Y. Sept. 29, 2023) (analyst report incorporated by reference); *Stadnick v. Vivint Solar, Inc.*, 2015 WL 8492757, at *1 n.4 (S.D.N.Y. Dec. 10, 2015) ("incorporated materials include . . . analyst reports" and a research report), *aff'd*, 861 F.3d 31 (2d Cir. 2017); *Shupe v. Rocket Cos., Inc.*, 660 F. Supp. 3d 647, 662 (E.D. Mich. 2023) (cited in MTS at 9) ("In securities fraud cases, such integral documents may include the full text of SEC filings, prospectus, analysts' reports, and statements.") (cleaned up).

Plaintiff once again argues that he has made "only limited references" to the documents. MTS at 8.  That is untrue.  Plaintiff quotes from Exhibits 14, 15, and 16 in support of the argument discussed above—that without PD-L1 scores for all patients in the trial, NovoCure could not show that the survival benefit was attributable to TTFields rather than to ICIs.  ¶¶ 60–62.  All three reports were issued during the putative class period. ¶ 60 (January 17, 2023 Evercore ISI report – Exhibit 16); ¶ 61 (March 17, 2023 J.P. Morgan report – Exhibit 14); ¶ 62 (May 31, 2023 J.P. Morgan report – Exhibit 15).  Plaintiff cites Exhibit 11, which post-dates the purported corrective disclosure, in support of his contention that that disclosure "revealed" the "significant problems" analysts had previously warned of.  ¶¶ 118–19.

These are not limited references.  The analyst reports are a critical part of Plaintiff's contention that "a key question among analysts and investors . . . was whether LUNAR's results

10

had been skewed by imbalances in patients' PD-L1 status among the trial's four subgroups." ¶ 59. And as with the ASCO slide deck, Defendants submit the reports to show market awareness rather than for the truth of the matter asserted. Defendants argue, for example, that the J.P. Morgan reports show that the market understood the divergence between LUNAR's patient population and the current U.S. patient population, as well as the implications of that divergence. Mot. to Dismiss at 20–21.

The Court may also take judicial notice of the statements in the analyst reports. *See Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 n.5 (2d Cir. 2020) (taking judicial notice of fact that analyst reports disclosed the "very fact that [plaintiff] asserts was concealed"). In *Bristol-Myers*, the plaintiffs claimed that the company had "misled the market" by stating that the patient population in a clinical trial of a lung cancer drug was limited to "strong" expressers of PD-L1. 28 F.4th at 352. The company ultimately revealed that by "strong" expression, it was referring to PD-L1 scores of 5% or higher. *Id.* at 347–48, 352. Plaintiff cited analyst reports showing that at least some market participants understood "strong" to mean a rate of expression greater than 5%. *Id.* at 352. The trial court took judicial notice of reports showing that *other* analysts understood "strong" to mean 5%, just as the company did—and hence that the market was not misled by the challenged term. The Second Circuit affirmed the trial court's decision to consider the analyst reports: "The fact that other reports, relying on the same public information, correctly predicted Bristol-Myers's use of a 5% threshold is relevant to [the] argument [that Bristol-Myers misled investors] and properly considered on this motion to dismiss." *Id.*

As in *Bristol-Myers*, Defendants here submit analyst reports to show market awareness. Indeed, the case for considering the reports is even stronger here than in *Bristol-Myers*. The court

11

there considered reports beyond those cited in the complaint.  Here, Defendants ask the Court only to take judicial notice of the very reports from which Plaintiff quotes.  That is altogether proper.[4]

### D.    The SEC Filings Containing Stock Sale Information (Exhibits 20–24) Are Properly Before the Court

Plaintiff moves to strike Exhibits 20–24.  Exhibits 20–23 are Forms 4 reporting stock sales by Ashley Cordova and William Doyle.  Exhibit 24 is a NovoCure Schedule 14A proxy statement showing Doyle's stock holdings.

All five documents are properly before the Court.  They are mandatory SEC filings whose accuracy cannot reasonably be questioned.  Courts routinely consider Forms 4 and related SEC filings to evaluate Section 10(b) plaintiffs' stock sale-related scienter allegations.  *E.g.*, *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 134 n.1, 176 n.33 (S.D.N.Y. 2023) (taking judicial notice of Forms 4 and considering the fact that certain sales were made for purposes of tax withholding); *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 763 F. Supp. 2d 423, 582–84 (S.D.N.Y. 2011) (denying motion to strike Forms 4 offered to show defendants' trading history; collecting authorities).

Indeed, courts routinely consider Forms 4 to examine even stock sales beyond those referred to in the complaint—sales made outside the class period, which are relevant in considering whether the cited sales are unusual in timing and amount.  *E.g.*, *In re Plug Power, Inc. Sec. Litig.*, 2022 WL 4631892, at *15 n.10 (S.D.N.Y. Sept. 29, 2022) (taking judicial notice of Forms 4 "to determine whether the individual defendants' trading activity during the Class Period was unusual when compared with their prior activity"); *In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d

---

[4] Plaintiff cites three decisions in which courts declined to take judicial notice of analyst reports, MTS at 9–10, but the reports at issue there were not cited in the complaints.  *Shupe*, 660 F. Supp. 3d at 663–64 (declining to judicially notice analyst report plaintiffs did not discuss); *Kinross*, 957 F. Supp. 2d at 286–89 (same); *In re Cree, Inc. Sec. Litig.*, 333 F. Supp. 2d 461, 470 (M.D.N.C. 2004) (same).

498, 525 (S.D.N.Y. 2020) (considering Forms 4 to evaluate pre-class-period stock sales); *Ophthotech*, 2019 WL 4464802, at *16 & n.19 (S.D.N.Y. Sept. 17, 2019) (taking judicial notice of Forms 4 to examine stock sales before and during class period); *Bear Stearns*, 763 F. Supp. 2d at 582–84 (denying motion to strike compilation of voluminous stock sales information from Forms 4; collecting authorities).  Under these authorities, the Court may properly consider the Forms 4 reflecting Cordova's stock sales, which Plaintiff discussed in the complaint.  The Court may also consider the two SEC filings reflecting Doyle's stock holdings, to which Plaintiff did not refer.  Like the pre-class period sales in the cases above, Doyle's trading history is relevant in assessing whether the cited stock sales are suspicious.  *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 383–84 (E.D.N.Y. Mar. 21, 2003) (holding that it was "significant" that the "chairman and CEO . . . who actually made most of the alleged misstatements during the class period" did not sell stock during the class period); Mot. to Dismiss at 41.

Plaintiff argues that the Court cannot consider the fact that Cordova's stock sales were non-discretionary—that is, made by the Company on her behalf for purposes of tax withholding.  But courts routinely consider exactly that fact in taking judicial notice of Forms 4.  *DraftKings*, 650 F. Supp. 3d at 134 n.1, 176 n.33 (taking judicial notice of "Form 4 statements and a chart summarizing them," and noting "periodic sales to fund tax payments"); *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 720 n.5 (S.D.N.Y. Jan. 11, 2018) (same); *In re Keryx Biopharm., Inc. Sec. Litig.*, 2014 WL 585658, at *13 & n.9 (S.D.N.Y. Feb. 14, 2014) (same, noting that "the relevant Form 4s" were subject to judicial notice); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (same).[5]  And courts recognize that sales made by companies

---

[5] Courts similarly take judicial notice of other information in Forms 4 bearing on the nature of the reported sales. *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 584, 587 (S.D.N.Y. 2011) (considering that sales were made under a Rule 10b5-1 plan); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 419 (S.D.N.Y. 2003) (considering that defendant's sales were made by bank pursuant to loan documents to satisfy margin calls).

13

for tax withholding purposes when an employee's stock rights vest—like Cordova's sales—are nondiscretionary and irrelevant to the scienter analysis. *Keryx*, 2014 WL 585658, at *13; *In re Bristol-Myers Squibb*, 312 F. Supp. 2d at 561; *see also* Mot. to Dismiss at 38.

Plaintiff asserts that the Forms 4 and proxy statement cannot be incorporated by reference or integral to the complaint because they "appear nowhere in" the complaint; Plaintiff even makes the dubious representation that he did not rely on the Forms 4 in drafting the complaint. MTS at 13 n.6. But a document may be integral and incorporated by reference into a complaint even when the plaintiff does not directly name or quote from it. This occurs when the document is an essential factual predicate of the plaintiff's allegations. *Sira*, 380 F.3d at 67 ("Although the complaint does not expressly cite the [order], this document is also incorporated into the pleading because [the order] was integral to" plaintiff's claim.); *Stolarik*, 323 F. Supp. 3d at 538 (document that "provides the factual premise" for plaintiff's claim is "integral"). It is difficult in any event to believe that Plaintiff did not rely on the Forms 4—or documents derived from them—in alleging stock sales by Cordova, Asaf Danziger, and five other NovoCure employees. Forms 4 are what make such information public.[6] If Plaintiff did not rely on the Forms 4 themselves, he relied on something sourced from them. Plaintiff includes in the complaint a chart with dates and amounts of seven employees' stock sales, including information about Rule 10b5-1 trading plans. ¶¶ 136–142. This is precisely the information recorded on Forms 4, and Plaintiff notably cites no alternate source for it.

---

[6] Disclosure of stock sales on Forms 4 is "mandatory" for reporting persons. 17 C.F.R. § 249.104. "Information disclosed [on Forms 4] will be a matter of public record and available for inspection by members of the public" and can be used by the SEC in "litigation involving the federal securities laws." *Id.* "Failure to disclose required information may result in civil or criminal action against persons involved for violations of the Federal securities laws and rules." *Id.*

14

In arguing that the Court cannot consider the Forms 4 (and proxy), Plaintiff ignores the great weight of authority holding otherwise. *Supra* at 12–14. Meanwhile, Plaintiff's own authorities do not support his position.

Plaintiff cites six decisions. The first two do not concern Forms 4 at all. In *Roth*, as discussed above, the Second Circuit stated that a court may "examine [a] document" to determine "whether or not [purportedly omitted] facts were disclosed" and "whether [a particular] representation was made." 489 F.3d at 509. *Roth* does not hold that courts are foreclosed from considering documents for any other purpose, and subsequent authority has stated that courts may consider documents contradicting allegations in a complaint. *Supra* at 3. In *Triaxx*, the court declined to take judicial notice of private reports not filed with the SEC. *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 2017 WL 3610584, at *10 (S.D.N.Y. July 26, 2017). That is unrelated to the issue here.

Plaintiff cites three decisions that do address Forms 4, but none warrants disregarding the Forms 4 in this case. The court in *Wagner* declined to consider, at the pleading stage, whether stock transaction information in Forms 4 could support a defendant's statutory defense to Section 16 strict liability claims for disgorgement of short-swing profits. *Wagner v. Royal Bank of Scotland Grp. PLC*, 2013 WL 4779039, at *3–4 (S.D.N.Y. Sept. 5, 2013). The decision does not relate to scienter, nor to the heightened PSLRA pleading standard, which *Tellabs* encouraged courts to apply with the aid of the doctrines of judicial notice and incorporation by reference. *Supra* at 2. In *Pitman*, the magistrate judge, in a single sentence in a report and recommendation, "accept[ed]" the plaintiff's argument that the court could not consider the truth of information in Forms 4. *Pitman v. Immunovant, Inc.*, 2024 WL 964258, at *1 n.3 (E.D.N.Y. Feb. 25, 2024). The magistrate judge did not address the voluminous authorities cited above, but recommended

15

dismissal based on other defects in the plaintiff's scienter allegations. *Id.* at \*15–20. The district judge adopted the report and recommendation and did not address the Form 4 issue. *Pitman v. Immunovant, Inc.*, 2024 WL 1342737 (E.D.N.Y. Mar. 29, 2024).

In the third of Plaintiff's three decisions, *OSI Pharmaceuticals*, the court rejected the defendants' argument that their Rule 10b5-1 plans, which were reflected in Forms 4, disposed of the plaintiff's scienter allegations. 2007 WL 9672541, at \*12. The court did not hold that it could not consider Forms 4 at the pleading stage. Indeed, the court *did* consider the Forms 4—it just held that the trading plan information contained in the forms did not give defendants the win on scienter. The defendants did not raise, and the court did not consider, any argument about nondiscretionary sales made by a defendant's employer to meet tax withholding obligations.

Plaintiff finally cites *Kinross*, which does not relate to Forms 4. The defendants there asked the court to take judicial notice of an increase in goldmining costs. 957 F. Supp. 2d at 288. The court explained that even if it took notice of the rise in costs in a certain year, it could not take notice of the causal effect the costs may have had on particular companies in the goldmining industry. *Id. Kinross* is inapposite. Defendants are not asking the Court to take notice of any causal connection. The Forms 4 report stock sales made on Cordova's behalf for tax withholding purposes. That fact appears on the face of the documents, and the Court may take judicial notice of it.

## II.    THE COURT MAY TAKE JUDICIAL NOTICE OF EXHIBITS 13 AND 17–19 BECAUSE THEY ARE GOVERNMENT RECORDS FROM THE FDA AND NIH

The remaining exhibits are FDA prescription labels and the record of the LUNAR trial protocol and patient eligibility on the National Institutes of Health's ClinicalTrials.gov website. These documents are subject to judicial notice. They contain facts that are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources

whose accuracy cannot reasonably be questioned." *Sharette*, 127 F. Supp. 3d at 75 (quoting Fed. R. Evid. 201(b)).

**Exhibits 17, 18, 19:**   Exhibits 17–19 are prescription labels approved by the FDA and available on the FDA's website.  Courts take judicial notice of FDA documents at the pleading stage in securities litigation. *In re Philip Morris*, 2021 WL 4135059, at *7 (citing *Koublani v. Cochlear Ltd.*, 2021 WL 2577068, at *5 (E.D.N.Y. June 23, 2021); collecting authorities). Plaintiff does not dispute that the Court can take judicial notice of FDA prescription labels to determine what those documents said.[7]

Plaintiff argues more narrowly that the Court cannot take judicial notice of the labels "to establish that defendant Doyle had a reasonable basis" for his statement that PD-L1 scores have shown no relevance in second-line treatment of NSCLC.  MTS at 7; ¶ 84.  But the Court in fact can consider FDA materials subject to judicial notice for the purpose of showing that Plaintiff's theory of scienter "lacks sufficient factual support." *Philip Morris*, 2021 WL 4135059, at *14 (FDA approval of tobacco product at issue undermined circumstantial scienter allegations concerning undisclosed studies).  The FDA labels on their face show, as Defendants argued, that "[o]f the three ICIs used in LUNAR, the FDA has approved two for the second-line treatment of NSCLC *regardless of PD-L1 scores*, and has approved the third for any patient with a PD-L1 score above 1%."  Mot. to Dismiss at 29.  The Court can consider that fact in evaluating Plaintiff's contention that Doyle's statement was purportedly baseless and reckless.

---

[7] Plaintiff cites two out-of-circuit decisions, *In re Green Dot Corp. Securities Litigation*, 2024 WL 1356253, at *3 (C.D. Cal. Mar. 29, 2024), and *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), about the "overuse" of judicial notice procedures.  MTS at 4–5.  Those cases do not describe Second Circuit law, and are irrelevant in any event because nearly all of the challenged exhibits are incorporated by reference or integral to the complaint, as explained.  Moreover, the directive from *Orexigen* was that a court taking judicial notice should "consider—and identify—which fact or facts it is noticing." *Orexigen*, 899 F.3d at 999.  Defendants have identified throughout their briefs the facts subject to judicial notice, and consideration of those facts is thus indisputably proper.

**Exhibit 13:**  Exhibit 13 is a record reflecting the LUNAR trial protocol, which is publicly available on ClinicalTrials.gov, a National Institutes of Health website.  This exhibit is subject to judicial notice because it is a "filing[] made to [a] government agenc[y], the authenticity of which is not in dispute."  *Abely v. Aeterna Zentaris Inc.*, 2013 WL 2399869, at *21 (S.D.N.Y. May 29, 2013) (denying motion to strike clinical trial protocol from ClinicalTrials.gov).

Plaintiff does not raise any question about the accuracy of the record reflecting the LUNAR trial protocol in Exhibit 13, other than to note that the "Record History" tab shows changes to the entry during and after the Class Period.  MTS at 11–12.  But the same tab shows that all of these changes were made to the "Study Status" portion of the entry, which inevitably occurs as a trial progresses.[8]  No changes were made to "Eligibility" for the LUNAR trial, which is the aspect of the protocol for which Defendants cited the document.  Mot. to Dismiss at 19.  Plaintiff raises no other objection to judicial notice.

Plaintiff argues again the Court should not take notice of the truth of "the factual assertions contained" in the record reflecting the trial protocol.  MTS at 11.  But the Court need not ascertain whether the information in the trial protocol record is correct.  The point once again is market awareness.  Defendants cited the document to show that investors knew that prior treatment with ICIs was not an eligibility requirement.  Mot. to Dismiss at 19 (citing Exhibit 13).  That is plainly subject to judicial notice.[9]

---

[8] https://www.clinicaltrials.gov/study/NCT02973789?tab=history:  see "versions" 126 through 137.

[9] Because all the documents are properly before the Court, the Court should also deny Plaintiff's alternative request to convert the motion to dismiss to one for summary judgment.  *See* MTS at 2–4, 15.  Neither of the decisions Plaintiff cites suggests otherwise.  Rather, both stand for the proposition, irrelevant to this case, that "[a] complaint that alleges facts related to or gathered during a separate litigation does not open the door to consideration, on a motion to dismiss, of any and all documents filed in connection with that litigation."  *Goel*, 820 F.3d at 560 (cited in MTS at 3, 4); *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 647 n.4 (S.D.N.Y. 2017) (cited in MTS at 4) (same).  In both cases, the courts declined to consider testimony from separate litigation where that testimony was not the source of the plaintiff's allegations.  *Goel*, 820 F.3d at 560; *Zohar CDO 2003-1*, 286 F. Supp. 3d at 647 & n.4.  That is plainly not the case here.

## CONCLUSION

For the reasons set forth above, the Court should deny the Motion to Strike.

Dated: May 28, 2024

**SIDLEY AUSTIN LLP**

/s/ *Francesca E. Brody*
Francesca E. Brody
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599
fbrody@sidley.com

Hille R. Sheppard (admitted *pro hac vice*)
One South Dearborn
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036
hsheppard@sidley.com

Robin Wechkin (admitted *pro hac vice*)
8426 316th Place Southeast
Issaquah, Washington
Telephone:  (415) 439-1799
Facsimile:  (415) 772-7400
rwechkin@sidley.com

*Attorneys for Defendants NovoCure Limited, William Doyle, Asaf Danziger, and Ashley Cordova*